**Ernest FEITEIRA,
Plaintiff/Respondent,**

v.

**CLARK EQUIPMENT CO.,
Defendant/Appellant.**

**No. ED 88652.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 21, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 9, 2007.

Application for Transfer Denied
Nov. 20, 2007.

Mark I. Bronson, Newman Bronson & Wallis, James R. Dowd, St. Louis, MO, for respondent.

John E. Galvin, Jonathan H. Garside, Ronda F. Williams, Fox Galvin, LLC, St. Louis, MO, for appellant.

KATHIANNE KNAUP CRANE, Judge.

Plaintiff was severely injured when a Bobcat steer-skid loader backed into him while he was installing forms for a concrete sidewalk. He sought damages from defendant manufacturer and seller on a theory of strict liability based on product design defect because the loader did not have a backup alarm. The trial court entered a judgment on the jury verdict in plaintiff's favor in the amount of $989,150.00 and costs. On appeal, defendant challenges the sufficiency of the evidence of causation and the trial court's evidentiary rulings. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2002, plaintiff, Ernest Feiteira, an employee of Gateway Contractors, prepared to pour a concrete sidewalk in Francis Park in the City of St. Louis. Plaintiff's job was to install forms to outline the shape of the sidewalk. He had been a concrete finisher for thirty years and had worked around skid-steer loaders his whole professional life. Michael Bess, another Gateway employee, moved rock into the forms and spread and graded the rock using a model 763 G Bobcat steerskid loader (hereinafter, the 763 G). Mr. Bess had 25 years experience in construction and had 12 to 15 years experience operating Bobcats like the 763 G.

As the work progressed, Mr. Bess made several passes with the 763 G to move the rock into the forms and repeatedly moved the 763 G forward and backward between the forms to level the rock. As Mr. Bess operated the 763 G, plaintiff and Terry Stubbs, another Gateway employee, prepared to install additional forms behind it.

While plaintiff was installing the forms, he saw the 763 G twenty feet away. There was nothing blocking plaintiff's view of the 763 G or Mr. Bess's view of plaintiff. After nailing some forms, he started to stand up, facing away from the 763 G, when it struck and backed over him. The 763 G caught plaintiff's foot and pulled him un-

derneath, severely injuring him. The 763 G was moving at a rate of no more than two to three miles per hour when it struck plaintiff. Mr. Bess was not looking in plaintiff's direction.

Defendant, Clark Equipment Co., doing business as Bobcat Company, manufactured, rented, and sold model 763 G Bobcat steer-skid loaders. Through a dealer, it sold the 763 G involved in plaintiff's accident to Johnson & Son, which in turn sold it to Gateway. At the time it was sold, the 763 G did not have a backup alarm. A model 763 G is made to run backward because grading requires running forward and backward.

At trial, William Dickenson, a mechanical engineer, testified as an expert witness on plaintiff's behalf. Mr. Dickenson testified that a 763 G creates a hazard to people behind it when it is operated in reverse because the operator, who must focus on the position of the blade, the location of the wheels, the location of the forms, and the work in front while simultaneously moving backward, may not see them. He further testified that there was no reason defendant could not have included a backup alarm as standard equipment. Mr. Dickenson testified, based on a reasonable degree of engineering certainty: 1) that at the time of the accident, the 763 G was being used in a manner reasonably anticipated; and 2) that the 763 G was unreasonably dangerous and defective when put to a reasonable use "because it was not equipped with standard equipment of an audible backup alarm system."

Plaintiff testified that he did not hear the 763 G coming toward him because Bobcats are loud and make the same noise whether they are moving forward or backward. He explained that he was familiar with other loaders that had backup alarms. He testified that he can hear a Bobcat with a backup alarm backing up from "pretty far away," and know when it was backing up. It could be difficult to discern whether a Bobcat that had no alarm was moving forward or backward because "[t]hey're loud. They get the same noise. When they go frontwards or backwards, it's the same sound. I don't know if they're coming back."

Mark Cummings, a Gateway employee with 10 years experience operating Bobcats, had not operated a Bobcat without a backup alarm in the four years since plaintiff's accident. He testified that when backup alarms go off, workers "are automatically looking to see where you're at and what you're doing and why it's going off." When they then see a Bobcat "coming backwards, they immediately move." He testified that a Bobcat without an alarm was dangerous because when workers "hear that motor running and they're used to it, it's just like you could be going forward or you could be going backwards. They don't know." However, the alarm makes workers look up and move out of the way. He testified that he never has had an experience in which workers have not reacted to a backup alarm or have gotten so used to it that they ignore it.

The case was submitted to the jury on Count I of the petition, which sought damages on a theory of strict liability based on product design defect, and comparative fault. The jury found the total amount of plaintiff's damages to be $1,355,000.00. It assessed seventy-three percent fault to defendant and twenty-seven percent fault to plaintiff. The trial court entered judgment in plaintiff's favor in the amount of $989,150.00 and costs. Defendant appeals.

## DISCUSSION

### I. Evidence of Causation

■ For its first point, defendant asserts that the trial court erred when it

denied its motion for judgment notwithstanding the verdict because plaintiff failed to make a submissible case of strict liability based on product design defect in that he did not produce substantial evidence of causation, that is, that plaintiff was injured because the 763 G was not equipped with a backup alarm. Defendant argues that plaintiff presented no evidence that he would have heard the alarm and reacted to it in time to step out of the 763 G's path because he testified that the 763 G gets louder as it approaches and he testified that he did not hear it. Defendant concludes that under these facts the jury would have to speculate to find that plaintiff would have responded to a backup alarm.

■ The principal question on review of a trial court's denial of a judgment notwithstanding the verdict is whether or not the plaintiff made a submissible case. *Savory v. Hensick*, 143 S.W.3d 712, 716 (Mo. App.2004). To make a submissible case, a plaintiff must support every fact essential to liability with legal and substantial evidence. *Id.* "Substantial evidence is evidence that has probative force on the issues, from which the trier of fact can reasonably decide the case." *Id.*

■ When we assess the sufficiency of the evidence, we view the evidence and all inferences that may reasonably be drawn therefrom in the light most favorable to the prevailing party and disregard all contrary evidence and inferences. *Id.* "We will not overturn a jury verdict for insufficient evidence unless there is a complete absence of probative facts to support the jury's verdict." *Id.* Whether evidence in a case is substantial and whether the inferences drawn are reasonable are legal questions that we review *de novo*. *Id.*

In order to prove a strict liability claim based upon a product's defective design, a plaintiff must show: 1) the defendant sold a product in the course of business; 2) the product was then in a defective condition and unreasonably dangerous when put to a reasonably anticipated use; 3) the product was used in a manner reasonably anticipated; and 4) plaintiff was damaged as a direct result of the defective condition that existed when the product was sold. Section 537.760 RSMo (2000); *Engel v. Corrigan Company–Mechanical,* 148 S.W.3d 28, 30 (Mo.App.2004); *see* MAI 25.04 [2002 6th Edition].

■ "Sufficient circumstantial evidence will support a jury verdict in a products liability case." *Peters v. General Motors Corp.,* 200 S.W.3d 1, 18 (Mo.App. 2006). However, a plaintiff who relies on circumstantial evidence must establish circumstances from which the claim may be inferred without conjecture or speculation. *Id.* "The circumstances proved must reasonably point to the desired conclusion and tend to exclude any other reasonable conclusion." *Id.* No submissible case is made if the evidence points equally to a cause for which the defendant is responsible and to one for which it is not. *Id.* However, a plaintiff is not required to exclude all possibility of a different cause for the injury or to present undisputed evidence. *Id.*

Defendant argues that plaintiff's testimony that he did not hear the 763 G at all conflicted with his testimony and other evidence that the 763 G was very loud, and this conflict allowed the jury to speculate that he would have heard and responded to the alarm. Defendant refers to this cross-examination:

Q You just didn't hear it this time?

A No.

Q It's not a matter of, well, I heard it, but I didn't know which way it was going. You just didn't hear it?

A No, because you hear it all day.

Q This particular time you just simply didn't hear it coming?

A No, I didn't.

Defendant claims this testimony conflicts with plaintiff's direct testimony that he knows when a Bobcat is on the job because it is very loud. This testimony was given in the following context:

Q On the ones without warning— what's the difference between Bobcats that had warning alarms, backup warning alarms, and those that didn't?

A The ones with alarms you can hear them backing up pretty far away. So you know they're coming backwards. The ones without you don't know if they're coming forward or backward.

Q What do you mean you don't know if they're going forward or backward?

A. They're loud. They get that same noise. When they go frontwards or backwards, it's the same sound. I don't know if they're coming back.

In the context of all of plaintiff's testimony, it is clear that when he testified on cross-examination that he did not hear the 763 G "coming," he did not mean that he heard no sound. Rather, he meant that he did not hear it backing towards him because the sound was undifferentiated. His testimony on cross-examination was not inconsistent with his testimony on direct examination.

In this case, there was evidence that fairly warranted a conclusion that plaintiff would have heard a backup alarm and would have reacted to it. There was evidence that plaintiff did not move from the path of the 763 G, although it was moving slowly enough for someone to get out of the way and there was an unobstructed view, because he was facing away from the 763 G while doing his work, and he could not discern from engine noise that it was backing toward him. Plaintiff testified that he could hear a Bobcat with a backup alarm from a distance and know that it was backing up. In addition, Mr. Cummings testified that he has never experienced a situation in which a worker has ignored or not reacted to a backup alarm. These facts and circumstances fairly warranted the conclusion that the absence of a backup alarm caused plaintiff to stay in the path of the oncoming 763 G and be injured. Plaintiff made a submissible case of causation that was not based on speculation. Point one is denied.

II. *Admission of Co-worker Opinion Testimony*

For its second point, defendant asserts that the trial court erred in overruling its objections to opinion testimony given by plaintiff's co-workers that the 763 G would have been safer with a backup alarm because the testimony had not been timely disclosed, it lacked foundation, and it was legally irrelevant. It argues that the co-workers were not qualified to give opinion evidence and their opinions that the 763 G was "safer" did not conform to the relevant legal standard.

At trial, plaintiff's co-workers, Roland Leveque, Mr. Stubbs, Mr. Cummings, and Mr. Bess, each testified as witnesses to the events surrounding the accident and the injuries. During their testimony, they also made the following statements, which defendant challenges in this point: 1) Mr. Leveque's testimony, "I won't run a Bobcat without one, without a safety signal or horn that we're talking, yes;" 2) Mr. Stubbs's testimony that he believed a backup alarm makes the 763 G safer; 3) Mr. Cummings's testimony that since plaintiff's injury he has not operated a Bobcat without a backup alarm, and that Bobcats are safer with an alarm; and 4) Mr. Bess's testimony that he had not operated a Bobcat without a backup alarm

since plaintiff's accident and that he thought Bobcats were dangerous without a backup alarm.

Defendant's objection to the co-workers' testimony was that these were expert opinions that had not been timely disclosed, the witnesses had not been qualified as experts, and the question, whether a Bobcat was safer with an alarm, is legally irrelevant because it misstates the standards. The trial court overruled the objection. It determined that, even though the failure to timely disclose was a discovery violation, defendant was not prejudiced because the witnesses had testified to these opinions in their depositions. It found that the co-workers were qualified to give opinions by reason of their experience. It last confirmed that it did not "believe that a witness is qualified to give an opinion as to whether or not this product was in a defective condition unreasonably dangerous." However, it explained that the co-workers' testimony on the degree of danger posed by the 763 G was relevant and the co-workers were qualified to testify:

> Part of what's involved in assessing whether or not the Bobcat was in a defective condition and reasonably dangerous is the degree of danger posed by the Bobcat. The degree of danger posed by this Bobcat is a relevant issue in this case. I believe this witness is qualified to offer an opinion on that issue even though it's not the ultimate issue in the case.

Neither party has provided us with relevant authority that either approves or disapproves of the co-workers' testimony in the context in which it was given. However, we do not need to resolve this issue because defendant has not shown that the trial court abused its discretion in not excluding the testimony for discovery violations, or that defendant was prejudiced by the admission of this testimony, which was cumulative to that of plaintiff's engineering expert.

## A. Discovery Violation

We first consider defendant's argument that the trial court erred in overruling its objection to plaintiff's co-workers' opinions because plaintiff did not disclose during discovery that his co-workers would serve as non-retained expert witnesses pursuant to Rule 56.01(b)(4)-(5). Defendant contends it would have prepared and taken the witnesses' depositions in a different manner if it had known the co-workers would testify as expert witnesses.

 We defer to the trial court's broad discretion in administering the rules of discovery. *Hertz Corp. v. Raks Hospitality, Inc.*, 196 S.W.3d 536, 545 (Mo.App. 2006). When a discovery ruling is challenged, we consider whether the challenged act, under the totality of the circumstances, has resulted in prejudice or unfair surprise. *Id.*

 For the purposes of this opinion, we assume, without deciding, that the co-workers' testimony constituted expert opinion evidence. Prior to trial, the co-workers had testified to the same opinions in their depositions. Defendant anticipated the possibility that plaintiff would offer that testimony at trial and filed a motion *in limine* to prevent the witnesses from testifying to their opinions. In these circumstances, plaintiff's failure to disclose that his co-workers would offer opinion testimony did not unfairly surprise or prejudice defendant. The trial court did not abuse its discretion in overruling defendant's objection to the co-workers' opinion testimony on the ground that plaintiff violated the rules of discovery.

## B. Qualifications and "Safety" Issue

Defendant next argues that the four co-workers were not qualified to give opinions because they were "users" not "designers" of the 763 G. Defendant concedes that they had experience in operating skid steer loaders, but this experience did not qualify them to give "expert design engineering opinions." Defendant also asserts that the issue of whether the Bobcat was safer with a backup alarm was legally irrelevant, because the ultimate issue was whether the Bobcat was "unreasonably dangerous," not whether it could be made "safer." We do not reach the merits of the admission of the co-workers' opinions as Bobcat users on whether a backup alarm was safer, because defendant was not prejudiced.

Even if opinion evidence has been erroneously admitted, the admission is not prejudicial if it is cumulative. *Fahy v. Dresser Industries, Inc.,* 740 S.W.2d 635, 642 (Mo. banc 1987); *Burrows v. Union Pacific R. Co.,* 218 S.W.3d 527, 538 (Mo. App.2007). In this case, plaintiff relied on the testimony of a mechanical engineer to establish the design defect and to testify to his opinion that the 763 G was unreasonably dangerous and defective when put to a reasonable use because it was not equipped with an audible backup alarm. That expert, Mr. Dickenson, testified extensively that the purpose of the backup alarm was to provide safety. He testified that a designer of machinery must take safety into account, that safety is a major concern in the design of machines, and that safety is contained in the code of ethics for professional engineers. He also testified that the hazard associated with backing up the 763 G is that someone could be behind it and not be seen, that an audible alarm would warn both the operator and the surrounding workers when the machine was backing up, that an audible alarm would provide protection for the people working around a Bobcat, that a backup alarm is a safety device that guards against the danger of hitting someone while backing up, and that a Bobcat is unsafe if the alarm is not functioning. He explained the basis for his opinion:

> It's based on material that I reviewed, all the depositions which defines the situation, on the understanding of the Bobcat, on my review of the material provided for it, on my past experience operating it. It's based on the hierarchy of design, applying this basic engineering tool to the hazard associated with the Bobcat in determining what the designer could do to make that a safe product and inform and warn the people around it of the hazard of this vehicle moving rearward.

The opinions of plaintiff's co-workers that a Bobcat was safer with a backup alarm, or dangerous without one, were cumulative to this expert testimony. Given the credentials of the expert, the scientific nature of his testimony, and the extent of his testimony, defendant could not have been prejudiced by each co-worker's one-sentence opinion that a Bobcat with an alarm was safer than one without an alarm.

For all of the above reasons, point two is denied.

### III. *Exclusion of Evidence of Plaintiff's Illegal Drug Use*

For its third point, defendant asserts that the trial court erred in excluding evidence of illegal and unprescribed drugs found in plaintiff's system shortly after the accident. Defendant asserts that this evidence was relevant and admissible to disprove plaintiff's theory of causation, impeach plaintiff's credibility, and measure plaintiff's comparative fault.

At a break during voir dire, the trial court granted plaintiff's motion in limine to

exclude evidence of the drug testing. It explained that the probative value of the evidence was very small and the prejudice exceeded the probative value. After defendant rested, it made an offer of proof that it would have offered the deposition testimony of its expert, Jerrold B. Leikin, M.D., an excluded portion of the deposition of William Ricci, M.D., that confirmed that plaintiff denied drug use on an intake form, and a portion of plaintiff's deposition in which he was questioned about drug use. It stated that plaintiff's deposition answers would have been contradicted by Dr. Leikin's opinions.

An offer of proof must demonstrate that testimony offered is relevant, and the offer must be specific and definite. *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983); *Shoemaker v. Ekunno*, 960 S.W.2d 527, 530 (Mo.App.1998). At trial, defendant did not explain that the proffered evidence was relevant or admissible on any of the grounds set out in this point. It only stated that plaintiff's deposition testimony would "contradict" Dr. Leikin's findings. "Contradiction" is not the same as "impeachment." " 'Impeachment' is directed to the credibility of a witness for the purpose of discrediting the witness and ordinarily furnishes no factual evidence, whereas 'contradiction' is directed to the accuracy of a witness' testimony and supplies additional evidence." *Budding v. Garland Floor Co., Inc.*, 939 S.W.2d 419, 426 (Mo.App.1996); see also *St. Louis Southwestern v. Federal Compress*, 803 S.W.2d 40, 45 (Mo.App.1990). Accordingly, the claim made in this point, that the excluded evidence was relevant and admissible to disprove plaintiff's theory of causation, impeach plaintiff's credibility, and measure plaintiff's comparative fault is not preserved for appeal. *See Shoemaker*, 960 S.W.2d at 530. Point three is denied.

### IV. Exclusion of Evidence of Audio Tape of Bobcat Engine Noise

For its fourth point, defendant asserts that the trial court erred in excluding from evidence defendant's Exhibit LL, an audio CD recording of the sound of a 763 G moving in reverse. Defendant contends that the evidence was relevant because it tended to 1) disprove causation and 2) prove plaintiff's comparative fault in failing to hear, perceive, and react to the sound of the 763 G.[1]

The use of demonstrative evidence is a matter of trial court discretion. *Moore v. Missouri Pacific R. Co.*, 825 S.W.2d 839, 846 (Mo. banc 1992). To demonstrate error, an appellant must show that the trial court abused its discretion and that it has been prejudiced. *Twin Chimneys v. J.E. Jones Const.*, 168 S.W.3d 488, 504 (Mo.App.2005).

During trial, plaintiff made an oral motion in limine to exclude Exhibit LL, an audio recording of the sound of a 763 G. Defendant responded that this exhibit was not a recreation but "a demonstrative exhibit to show the sound characteristics" of a 763 G. Defendant added that it wanted to show "what the machine sounds like." The court explained that its decision to

1. When it makes a challenge to the exclusion of exhibits, an appellant must provide excluded exhibits in the record on appeal. Rule 81.12; *Miller v. City of Kansas City*, 121 S.W.3d 313, 318 (Mo.App.2003); *State ex rel. Missouri Highway and Transp. Com'n v. Gannon*, 898 S.W.2d 141, 144 (Mo.App.1995). Here, defendant attached Exhibit LL to its brief, but this does not satisfy the requirement that the excluded exhibits be filed with the record on appeal. *In re Marriage of Weinshenker*, 177 S.W.3d 859, 862 (Mo.App.2005). We have, however, reviewed this point on the merits as though the exhibit had been properly filed.

exclude Exhibit LL, along with two video-tapes of the 763 G, was based on *Grose v. Nissan*, 50 S.W.3d 825 (Mo.App.2001). The court pointed out that the evidence was not offered to recreate the events, but to "illustrate a physical property of the Bobcat, to wit, it's really, really loud." It explained:

> The Court believes that the average lay-person would not find it difficult to understand that the Bobcat is really, really loud and easily heard. I think it was attested to by several of the witnesses that it was loud and easily heard by people in its vicinity. It got louder the closer it came to the person listening to it. On that basis the Court affirms its ruling excluding the evidence.

Defendant argues, for the first time on appeal, that *Grose* is limited to videotapes and that the audio CD should have been admitted as a demonstrative exhibit that was relevant to the issues being tried, citing *State v. Franklin*, 752 S.W.2d 937, 939 (Mo.App.1988). Even if this contention had been preserved, we do not reach it, because a party is not prejudiced by the trial court's exclusion of a demonstrative exhibit that is cumulative. *McPherson Redevelopment Corp. v. Watkins*, 782 S.W.2d 690, 693 (Mo.App.1989). Several witnesses, including plaintiff, testified that the 763 G was loud, and that the 763 G gets louder as it gets closer. Defendant's expert, Dr. Lynnes, also testified that the engine noise gets louder as it gets closer. In addition, the jury saw a videotape that depicted the 763 G moving in reverse and heard the sound it made. Thus, the audio recording would have been cumulative evidence of the sound made by a 763 G. As a result, defendant was not prejudiced by the exclusion of this evidence. Point four is denied.

### V. Cumulative Effect of Counsel's Violations of Pretrial Orders

For its fifth point, defendant asserts that the trial court erred in denying its motion for new trial because plaintiff's counsel repeatedly and intentionally violated the court's pretrial orders. Specifically, defendant argues that plaintiff's counsel mentioned dissimilar other accidents that occurred on different skid steer loader models, mentioned inapplicable OSHA regulations, and misled the jury on the law allowing worker's compensation benefits. Defendant asserts that it was prejudiced by the cumulative effect of plaintiff's counsel's misstatements and that this prejudice warrants a new trial, even if the misstatements, considered individually, were not sufficiently prejudicial to warrant a new trial. In its motion for new trial, defendant did not claim that the *cumulative* effect of plaintiff's counsel's statements required a new trial, and therefore did not preserve this question for review. *See Henderson v. Fields*, 68 S.W.3d 455, 473 (Mo.App.2001); *State v. Moore*, 546 S.W.2d 10, 13 (Mo.App.1976). Point five is denied.

### VI. Cumulative Trial Court Error

In its sixth point, defendant contends that the trial court erred in denying its motion for a new trial because the cumulative effect of the trial court's errors in admitting the opinion testimony of plaintiff's co-workers, excluding evidence of plaintiff's alleged drug use, and excluding the audio recording of the Bobcat, together with plaintiff's counsel's alleged misconduct, denied defendant a fair trial. Defendant did not raise this claim of cumulative error in its motion for new trial, and thus did not preserve it for review. *Freeman v. Kansas City Power & Light Company*, 502 S.W.2d 277, 284 (Mo.1973). Further, because we have found that none

of these actions standing alone constituted error, there was no cumulative error. *See Nelson v. Waxman,* 9 S.W.3d 601, 608 (Mo. banc 2000); *Steele v. Evenflo Co., Inc.,* 147 S.W.3d 781, 794 (Mo.App.2004). Point six is denied.

*Conclusion*

The judgment of the trial court is affirmed.

ROY L. RICHTER, P.J. and SHERRI B. SULLIVAN, J., concur.