# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2016-SC-000111-WC

COMMONWEALTH OF KENTUCKY,               APPELLANT
UNINSURED EMPLOYERS' FUND


ON APPEAL FROM COURT OF APPEALS
V.               CASE NO. 2015-CA-000401-WC
WORKERS' COMPENSATION NO. 08-WC-00242


MICHAEL BROCK; GEORGE BRENT               APPELLEES
OWEN; MORE POWER DIESEL, INC.;
WINFORD L. BREWER, MARY JO BREWER,
MICHAEL R. CORNWELL, CYNTHIA G.
CORNWELL, WILLIAM L. HANEY, SR.,
SHERRY HANEY, ALL DBA HBC LEASING
COMPANY; O & O BUILDERS; HONORABLE
THOMAS POLITES, ADMINISTRATIVE LAW
JUDGE; AND WORKERS' COMPENSATION
BOARD


**OPINION OF THE COURT BY JUSTICE VENTERS**

**AFFIRMING**

The Kentucky Uninsured Employers' Fund (UEF) appeals from a decision issued by the Court of Appeals in a workers' compensation proceeding. The decision upheld the conclusions of the Administrative Law Judge (ALJ) and the Workers' Compensation Board (Board) that neither More Power Diesel, Inc. (MPD), HBC Leasing Company (HBC), nor the owners of these companies individually, were "up-the-ladder" contractors under KRS 342.610 and KRS 342.700 for the purposes of assigning liability following a work-related injury incurred by Michael Brock.

Because the record supports the determinations by the lower tribunals that Brent Owen was the general contractor on the Livingston County construction project at issue, and that neither MPD, HBC, nor the companies' owners individually, were contractors on the project so as to be subject to up-the-ladder liability, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the light most favorable to the ALJ's findings, the facts are as follows. MPD is a diesel engine repair shop. It is owned by diesel mechanics Winford Brewer, William Haney, Sr., and Michael Cornwell (the Partners). The same three men, along with their wives, also own HBC, a company they formed for the purpose of investing in real estate.[1] HBC has no employees and in 2007 it owned three tracts of land, including a tract in Livingston County where Brock's work-related injury occurred.

Brent Owen operated an automobile repair shop situated on part of HBC's Livingston County tract. In addition to his auto repair shop, Owen was also an owner of O & O Builders, a building contractor business. In 2007, Owen planned to open a third business and was looking for an available location for his new project. After a period of discussions, Owen and HBC agreed that HBC would arrange for the construction of a new building on the

---

[1] HBC was a partnership comprised of Haney, Brewer, and Cornwell and their wives until it was restructured as a limited liability corporation (with the same owners) after Brock filed his claim. This restructuring is not relevant to our review.

Livingston County tract near Owen's auto repair business, and Owen would lease the new building for his new business.

Because Owen owned a construction company, O & O Builders, the agreement provided that Owen would assume the role of general contractor for the new building. This approach made sense because, among other things, none of the MPD partners/HBC owners had any experience as a building contractor. They agreed that Owen would be paid half of the money for the construction up front, and the other half upon completion of the building.

Owen commenced the construction project in the summer of 2007. He subcontracted with a second construction company to assist in the construction of the building. He also separately employed Michael Fiers and Michael Brock to work on the project. In September 2007, Brock and Fiers were working at the construction site when the shovel of a Bobcat front loader malfunctioned and dumped a load of gravel on Brock, and then turned over on him. Brock was gravely injured in the accident; among other things he suffered bruising to his heart and lungs, a lacerated kidney, and several injured or broken vertebrae.

At the time of Brock's injury, neither O & O Builders nor Owen himself had workers' compensation insurance. With no employees, HBC had no workers' compensation insurance. Only MPD, the diesel mechanic shop, had workers' compensation insurance.

Brock filed a timely claim for workers' compensation benefits. Owen, and Cornwell and Brewer of HBC and MPD, testified regarding the nature of their

3

respective businesses and the circumstances leading to the construction of the building. Their testimony uniformly supported the fact that Owen was to act as the contractor on the building construction project.

The ALJ entered an Opinion and Award which concluded that Brock had suffered a 58% impairment and did not retain the physical capacity to return to his prior work in construction. The ALJ concluded that Brock was not permanently totally disabled, and awarded him a benefit of $121.35 per week for 520 weeks with interest from the date of his injury. The ALJ identified Owen as the party responsible for payment of Brock's benefit. Since Owen did not have workers' compensation insurance, the burden of compensating Brock was scheduled to fall upon UEF pursuant to KRS 342.760.[2] Anticipating this result, UEF filed a pleading to add MPD, HBC, and the individuals owning those businesses as parties to the proceedings and to assign financial responsibility to them.

UEF argued before the ALJ that pursuant to the up-the-ladder provisions of KRS 342.610 and KRS 342.700, MPD (which had workers' compensation coverage) was financially responsible for Brock's benefit award due to its close ties to HBC, including the commingling of business activities, and its alleged

---

[2] "The uninsured employers' fund shall be responsible for the payment of compensation when there has been default in the payment of compensation due to the failure of an employer to secure payment of compensation as provided by this chapter. Such employer shall be liable for payment into the fund of all the amounts authorized to be paid therefrom under the authority of this subsection including reimbursement of the special fund of all liability apportioned to it and for the purposes of enforcing this liability the Labor Cabinet, for the benefit of the fund, shall be subrogated to all the rights of the person receiving such compensation from the fund." KRS 342.760(4).

4

participation in the agreement with Owen for construction of the building. The ALJ rejected this argument and concluded that neither MPD nor HBC were "contractors engaged in the business of construction" as required to establish up-the-ladder liability. The ALJ reasoned that the up-the-ladder statutes were not intended to make every entity that contracts with a general construction contractor responsible for the contractor's actions regardless of the nature of the business that had hired the contractor.

UEF appealed to the Board which affirmed the ALJ's decision dismissing HBC and MPD as parties. The Board found no merit in UEF's efforts to link MPD or HBC to Owen's responsibility for providing Brock with workers' compensation coverage. The Court of Appeals subsequently affirmed the Board's decision. This appeal followed.

## II. STANDARD OF REVIEW

"An award or order of the administrative law judge . . . shall be conclusive and binding as to all questions of fact . . . ." KRS 342.285. Accordingly, as the statutorily assigned fact-finder in this proceeding, the ALJ has the sole authority to determine the quality, character, and substance of the evidence. *Square D Company v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993) (citation omitted). Similarly, the ALJ has the sole authority to judge the weight and inferences to be drawn from the evidence. *Miller v. East Kentucky Beverage/Pepsico, Inc.*, 951 S.W.2d 329, 331 (Ky. 1997) (citation omitted); *Luttrell v. Cardinal Aluminum Co.*, 909 S.W.2d 334 (Ky. App. 1995). Further,

5

the ALJ, as fact-finder, "may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof." *Magic Coal v. Fox*, 19 S.W.3d 88, 96 (Ky. 2000) (citing *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977)); *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999); *Halls Hardwood Floor Company v. Stapleton*, 16 S.W.3d 327, 329 (Ky. App. 2000). Mere evidence contrary to the ALJ's decision is not adequate to require reversal on appeal. *Whittaker*, 998 S.W.2d at 482 (citation omitted). In order to reverse the decision of the ALJ, it must be shown there was no evidence of substantial probative value to support his decision. *Special Fund v. Francis*, 708 S.W.2d 641 (Ky. 1986).

When reviewing a decision of the Board, we will affirm absent a finding that the Board has misconstrued or overlooked controlling law or has so flagrantly erred in evaluating the evidence that a gross injustice has occurred. *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687–688 (Ky. 1992).

## III. UP-THE-LADDER LIABILITY ISSUES

In its appeal to this Court, UEF continues to argue that either MPD, HBC, and/or the individual Partners and their wives should bear up-the-ladder financial responsibility under KRS 342.610 and KRS 342.700 for the work-related injuries incurred by Brock, in light of the failure of Owen and O & O Builders to have workers' compensation coverage at the time of his injury.

6

As the proponent of assigning up-the-ladder liability, the burden fell upon UEF to prove the essential elements of its position. *Burton v. Foster Wheeler Corporation*, 72 S.W.3d 925, 929 (Ky. 2002) (citations omitted). Since UEF was unsuccessful in its burden of proof before the ALJ, the question on appeal is whether the evidence is so overwhelming, upon consideration of the whole record, as to compel a finding in UEF's favor. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984). Compelling evidence is defined as evidence that is so overwhelming no reasonable person could reach the same conclusion as the ALJ. *REO Mechanical v. Barnes*, 691 S.W.2d 224, 226 (Ky. App. 1985).

KRS 342.610(2) provides in relevant part as follows:

(2) A *contractor* who subcontracts all or any part of a contract and his or her carrier *shall be liable* for the payment of compensation to the employees of the subcontractor *unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter.* Any contractor or his or her carrier who shall become liable for such compensation may recover the amount of such compensation paid and necessary expenses from the subcontractor primarily liable therefor. *A person who contracts with another:*

> (a) To have work performed consisting of the removal, excavation, or drilling of soil, rock, or mineral, or the cutting or removal of timber from land; or
>
> (b) *To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person*

*shall for the purposes of this section be deemed a contractor, and such other person a subcontractor.* This subsection shall not apply to the owner or lessee of land principally used for agriculture.

(Emphasis added.)

7

The purpose of KRS 342.610 "is to discourage a contractor from subcontracting work that is a regular or recurrent part of its business to an irresponsible subcontractor in an attempt to avoid the expense of workers' compensation benefits." *General Electric Corporation v. Cain*, 236 S.W.3d 579, 585 (Ky. 2007). In the context of this provision "'[r]ecurrent' simply means occurring again or repeatedly. 'Regular' generally means customary or normal, or happening at fixed intervals. However, neither term requires regularity or recurrence with the preciseness of a clock or calendar." *Id.* at 586 (citation omitted).

The other up-the-ladder statutory provision relied upon by UEF, KRS 342.700(2), provides, in part, as follows:

> A principal contractor, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any one (1) of his intermediate or subcontractors and engaged upon the subject matter of the contract, to the same extent as the immediate employer.

When a contractor falls within the provisions of KRS 342.610 or KRS 342.700, he may be found liable for an injured worker's claim even though he did not directly employ the claimant. However, to be adjudged liable, an entity must fit those statutes' descriptions of a "contractor," and for that to occur he must be regularly engaged in the same or similar type of work as the work the subcontractor was hired to perform.

To determine this, a series of factors are taken into consideration, including the putative "contractor's" nature, size, and scope, as well as whether he is equipped with the skilled manpower and tools to handle the task the

8

"subcontractor" was hired to perform. *See Cain*, 236 S.W.3d at 588 (citation omitted). Here the ALJ undertook this examination and made a factual finding that none of the entities to which UEF would assign liability qualify as a contractor based upon the applicable factors. This finding is supported by the testimony and other evidence presented into the record.

The record is replete with largely uncontested testimony regarding the nature of MPD's and HBC's business operations, and the arrangements they made with Owen for the construction of the building. Cornwell, Brewer, and Owen all testified that Owen himself originally proposed the construction of the building on the Livingston property, with the objective that he would take charge of the construction project and, upon its completion, he would then lease it for use by his new business venture. There was conflicting evidence about whether the initial payment to Owen under the construction contract came from MPD's bank account, even though HBC was the owner of the property. However, the manner in which MPD and HBC may have commingled their funds has no effect on our determination because neither entity qualifies as a contractor for purposes of up-the-ladder liability for Brock's injury.

The testimony of Cornwell, Brewer, and Owen plainly established that MPD was a diesel engine repair business and that constructing a building was not a regular and recurring part of its work. The evidence established with equal clarity that HBC was in the business of leasing property, that its work did not include construction of buildings, and that it had no employees. The ALJ's findings to that effect were solidly supported by substantial evidence.

Uncontested evidence also established that Owen employed Fiers and Brock to do the gravel work in connection with the building project, which further supports the ALJ's finding that Owen was the exclusive contractor on the project and that MPD and HBC did not meet the relevant statutory criteria to qualify as contractors ladened with up-the-ladder liability. Because the ALJ is the fact finder in a workers' compensation proceeding, we defer to his assessments of the weight, credibility, and substance of the evidence and are constrained to accept his findings because they are supported by the evidence of record.

UEF argues that HBC and MPD explicitly or implicitly contracted with Owen to construct the building, and should therefore be regarded as contractors. We disagree. Entering into a contract with a building contractor does not convert one into a "contractor" for purposes of "up-the-ladder" liability. KRS 342.610(2) imposes such liability only when the work for which one contracts is a "regular or recurrent part of the work" of one's own "trade, business, occupation, or profession." For MPD or HBC to qualify as "contractors" for up-the-ladder liability purposes, the same work they hired Owen to perform must be a regular or recurrent part of their work. *See Cain*, 236 S.W.3d at 588. The facts in evidence simply do not bear that out.

We agree with the conclusions of the other tribunals that reviewed this matter. There is no statutory basis for holding MPD or HBC liable on a claim for which Owen was solely responsible.

10

## IV. CONCLUSION

The ALJ and the Board properly construed the clear dictates of KRS 342.610 and KRS 342.700, and the application of those statutes to the present facts of this matter. Hence, we affirm the Board's January 30, 2015 decision in its entirety; and, consistent with that decision, the matter is remanded to the ALJ for dismissal of HBC and MPD as parties to Brock's claim.

All sitting. All concur.

COUNSEL FOR APPELLANT COMMONWEALTH OF KENTUCKY, UNINSURED EMPLOYERS' FUND:

Charles Davis Batson
Assistant Attorney General
Uninsured Employers' Fund


COUNSEL FOR APPELLEE MICHAEL BROCK:

William Pinkston
Denton Law Firm, PLLC

COUNSEL FOR APPELLEE GEORGE BRENT OWEN:

Not Represented By Counsel

COUNSEL FOR APPELLEE MORE POWER DIESEL, INC.:

Samuel J. Bach
Bach & Armstrong, LLP

COUNSEL FOR APPELLEES WINFORD L. BREWER AND MARY JO BREWER:

David Craig Troutman
Edward & Kautz, PLLC

COUNSEL FOR APPELLEES MICHAEL R. CORNWELL, CYNTHIA G. CORNWELL, WILLIAM L. HANEY, SR., AND SHERRY HANEY, ALL DBA HBC LEASING COMPANY:

Mark H. Edwards
Edwards & Kautz, PLLC

COUNSEL FOR APPELLEE O & O BUILDERS:

Not Represented By Counsel

12