**The STATE of Ohio**

v.

**LATTA.**

2003-Ohio-5952.]

Hamilton County Municipal Court, Ohio.

No. C03TRC 203 A, B, C.

Decided Sept. 5, 2003.

Jonathan B. Cosgrove, Hamilton Assistant City Prosecutor, for plaintiff.

Peter Rosenwald, for defendant.

---

ELIZABETH B. MATTINGLY, Judge.

{¶ 1} Defendant Nicholas Latta is charged with driving under the influence of drugs of abuse in violation of R.C. 4511.19(A).

{¶ 2} Defendant Latta was stopped on December 30, 2002, at approximately 1:00 a.m., when Officer Abrams ran the license plates on his vehicle and determined that the plates on the vehicle were not registered for the 1992 Plymouth Voyager that defendant was driving. In the process of making the stop, the officer followed defendant for about three-quarters of a mile and, during that time, he observed no improper driving. However, when Officer Abrams approached the vehicle, he smelled a strong odor of marijuana coming from the vehicle. Defendant then produced his license without difficulty when the officer requested it.

{¶ 3} Officer Abrams called a second officer, Officer Roach, to the scene to administer field sobriety tests. Defendant passed the horizontal gaze nystagmus test, indicating that no alcohol was present in his system. He was very unsteady on his feet when he got out of the car and moved at an extremely slow pace. As Officer Roach described it, defendant almost seemed to be moving in slow motion. Defendant had extremely white, glazed-over eyes with dilated pupils and very slow, slurred speech. Officer Roach noted that it took defendant several seconds to speak a sentence. In addition, he failed two other field sobriety tests of his coordination. Specifically, he stepped off the line, raised his arms above his waist to keep his balance, and did not properly turn on the walk-and-turn test. On the one-leg stand, defendant lost his balance and lifted his arms almost to shoulder height to regain his balance. Later on, he put his foot on the ground and then lost his balance again and had to grab the rear of his car to catch himself. The officer further noted that defendant smelled of marijuana on his person, although he also testified that such an odor could linger on defendant's clothing long after marijuana had been ingested. Based on the odor of marijuana and the failed field sobriety tests, defendant Latta was arrested for driving under the influence of a drug of abuse and for unauthorized plates. He was subsequently taken to the hospital, where blood was drawn with his consent at approximately 2:25 a.m.

{¶ 4} Defendant's vehicle was towed and as part of the inventory, the officers found 24 empty wrappers that had contained Coricidan tablets in the back seat and a marijuana pipe in the center console of the vehicle. After being given appropriate *Miranda* warnings, defendant admitted that he had ingested eight Coricidan cough and cold pills. He took these pills at one time because he hoped and expected that it would give him a "slow motion high."

{¶ 5} A witness called by the state, Dr. Robert Powers, a toxicologist with the Hamilton County Coroner's Office, testified at trial that his analysis of defendant's blood demonstrated that he had no alcohol in his system. Defendant did, however, have 24 nanograms of THC metabolite in his blood. Dr. Powers noted that THC metabolite is the residue of THC, the active component in marijuana that causes its most noticeable effects. THC travels very quickly from the blood to the brain. THC is not detectable in the blood in as little as 20 minutes after ingestion, but it remains in the blood for several days after ingestion of marijuana. Thus, the presence of THC metabolite in the blood indicated only that the defendant had ingested marijuana sometime from 20 minutes prior to when his blood was drawn to several days before it was taken. For this reason, it is very difficult to correlate the level of THC metabolite in blood with any physiological effect. The presence of THC metabolite in the blood is not predictive of any motor impairment but can only explain motor impairment.

{¶ 6} In this instance, due to the time lapse of almost an hour and a half, the presence of THC metabolite in defendant's blood does not prove that defendant was under the influence of marijuana at the time he was stopped.

{¶ 7} The question then becomes whether defendant was noticeably impaired due to his admitted ingestion of Coricidan. As to this issue, Dr. Powers testified that Coricidan is a central-nervous-system depressant that operates in a manner similar to alcohol. Thus, it could cause the effects in terms of slowness of movement, slowness of speech, and motor impairment that the officers observed in Latta on the evening in question.

{¶ 8} Nevertheless, defendant argues that even if the state could prove that defendant took Coricidan in excessive amounts, which impaired his ability to drive a motor vehicle, he could not be found guilty of the offense of driving under the influence of a drug of abuse in violation of R.C. 4511.19(A) because Coricidan is not a "drug of abuse."

{¶ 9} The term "drug of abuse" is not defined in R.C. Chapter 4511, which lists the elements of the offense of driving under the influence of a drug of abuse. Defendant herein urges the court to apply the definition of "drug of abuse" found in R.C. 3719.011(A). This code section, which was first enacted in 1970 as part of

the controlled substances chapter of the Revised Code, defines "drugs of abuse" by referring to three other definitions in the Revised Code as follows:

" 'Drug of abuse' means any controlled substance as defined in section 3719.01 of the Revised Code, any harmful intoxicant as defined in section 2925.01 of the Revised Code, and any dangerous drug as defined in section 4729.01 of the Revised Code."

{¶ 10} Using the above-listed categories, Coricidan is not a "drug of abuse."[1]

{¶ 11} There is, however, another definition of "drug of abuse" that was added to the Revised Code in Amended Substitute House Bill No 381, effective July 1, 1989. 143 Laws of Ohio, Part III, 4697, 4774 (1989–1990). This definition is found in R.C. Title 45, which deals with Motor Vehicles, Aeronautics, and Watercraft. Thus, R.C. 4506.01(L) states that a drug of abuse means "any controlled substance, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication that, when taken in quantities exceeding the recommended dosage, can result in impairment of judgment or reflexes."

{¶ 12} Applying this definition, Coricidan is a "drug of abuse" if it was shown to have been ingested in quantities exceeding the recommended dosage, which resulted in the impairment of judgment or reflexes.

{¶ 13} The question of which of these two definitions of "drug of abuse" should be applied to violations of R.C. 4511.19 is fundamentally one of legislative intent. As noted in numerous Ohio court decisions, the primary and paramount rule in interpretation and construction of a statute is to ascertain, declare, and give effect to the intention of the legislature, if possible. *Christe v. GMS Mgt. Co., Inc.* (2000), 88 Ohio St.3d 376, 726 N.E.2d 497. In making this determination, courts look to the purpose to be accomplished by the law. In determining this purpose, constructions should be avoided that are contrary to the general spirit and purpose of the statute. *Westlake v. Westlake* (1890), 47 Ohio St. 315, 24 N.E. 412. Moreover, the totality of existing legislation on the same subject should be construed together.

{¶ 14} As specifically regards this case, the intent of the legislature in enacting prohibitions against drunk driving has often been stated as attempting to rid the state's highways of irresponsible drunk drivers and eliminating the threat of drunk driving within the state. Painter, Ohio Driving Under the Influence Law (2003), Section 1.1.

---

1. It is not on the list of "controlled substances" in R.C. 3719.01; it is not a "harmful intoxicant" under R.C. 2925.01(I), as it is not inhaled; and it is not a "dangerous drug" under R.C. 4729.01,, since it is not a prescription drug, a drug listed in this section, or a drug intended for administration by injection into the human body other than through a natural orifice because it is a pill.

{¶ 15} Considering this purpose, the court finds that the definition of "drug of abuse" found in R.C. 4506.01(L) is most appropriate to determine whether someone is guilty of driving under the influence of a drug of abuse under R.C. 4511.19. In coming to this conclusion, the court notes that the definition of "drug of abuse" listed in R.C. 4506.01(L) was enacted in 1989, despite the fact that a definition of "drug of abuse" as defined in R.C. Title 37 was already in the Revised Code. Patently, the legislature intended to apply to impaired driving a new definition that focused on impairment. Moreover, R.C. 4506.01(L) is in the traffic section of the Revised Code, whereas the categories of "drug of abuse" listed in R.C. 3719.011 are derived from statutes that are concerned primarily with licensing of manufacturers and other distributors of certain controlled substances and dangerous drugs, recordkeeping regarding the same, dispensing by pharmacists and wholesalers, labeling of drugs, and otherwise setting governmental controls over certain drugs. Again, the issue of impaired functioning is not the focus of these code sections. In contrast, a definition of "drug of abuse" in R.C. 4506.01(L) that prohibits being under the influence of any drug that impairs one's judgment and reflexes and focuses its definition on impairment seems to further the intent of the legislature in curbing impaired driving.[2]

{¶ 16} Moreover, it seems to this court more appropriate to use a definition from the Traffic Code to define a traffic violation than to apply a definition from the regulated-drugs sections of the Revised Code. Finally, citizens of this state are as imperiled by drivers whose reflexes and judgment are impaired by the abuse of over-the-counter medications as they are by the use of more closely regulated drugs.

{¶ 17} Few, if any, Ohio cases have addressed the issue of which definition of "drug of abuse" should properly be applied to a drunk-driving case.[3] The two appellate districts that have considered this issue have concluded that R.C. 4506.01 is the more appropriate definition of this term applied to R.C. 4511.19. The first case, State v. BoCook (Oct. 6, 1992), Ross App. No. 1813, 1992 WL 276559, simply asserts that in a drunk-driving case, the more reasonable definition to determine what constitutes a "drug of abuse" is the definition provided in R.C. 4506.01(L). The Sixth Appellate District followed this reasoning in State v. Smith (Feb. 27, 1998), Ottawa App. No. OT–97–037, 1998 WL 102143, citing the

---

2. Even under R.C. 3719.011(A) as noted in Painter, Ohio Driving Under the Influence Law (2003), at Section 1.19, many over-the-counter drugs are proscribed in the general context of "drugs of abuse." However, several over-the-counter drugs that are subject to abuse are not apparently included within this definition.

3. The overwhelming majority of DUI cases concern alcohol. Relatively few deal with impaired driving due to the ingestion of drugs.

*BoCook* decision[4] and noting the even a properly prescribed prescription medication could be a drug of abuse if it impaired one's ability to operate a motor vehicle. See, also, *State v. Wiley* (Dec. 23, 1999), Lucas App. No. L–98–1212, 1999 WL 1267368. This court therefore finds that in determining whether the law has been violated under the driving under the influence of a drug of abuse, the definition in R.C. 4506.01(L) applies.

{¶ 18} Turning however to the specific facts of this case, the court finds that the state has failed to meet its burden of proving that defendant Latta was driving under the influence of a drug of abuse even if the definition of "drug of abuse" set forth in R.C. 4506.01(L) is used. Most important, no testimony was elicited from Dr. Powers as to the appropriate dose for Coricidan and whether the eight pills the defendant said he took exceeded that dose. Without such testimony, the state has failed to prove that the defendant was under the influence of a drug of abuse as defined anywhere in the Revised Code. This court therefore finds him not guilty of the charge.

{¶ 19} So ordered this 5th Day of September 2003.

Defendant not guilty.

----

4. The decision notes that the defendant in that case took a drug called Soma, which is not otherwise described as a prescription or nonprescription drug.