Danny SECRIST and Erin Secrist, Appellants,

v.

TREADSTONE, LLC, and John H. Johntz, III, Respondents.

No. WD 73250.

Missouri Court of Appeals, Western District.

Nov. 1, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 2011.

Application for Transfer Denied Jan. 31, 2012.

Edwin H. Smith, St. Joseph, MO, for appellants.

Keith W. Ferguson, St. Joseph, MO, for respondents.

Before Division Three: KAREN KING MITCHELL, Presiding Judge, JAMES M. SMART, JR., Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Danny Secrist and Erin Secrist appeal the Judgment of the Circuit Court of Buchanan County in their favor for $31,500 and $600 respectively in damages on their claims against Treadstone, L.L.C., and in favor of John Johntz on their claims against him. We affirm in part, reverse in part, and remand.

### Factual Background[1]

This appeal arises out of an accident on November 3, 2008 in a building ("the United Building") owned by respondent Treadstone L.L.C. ("Treadstone"), which was itself half owned by respondent John Johntz ("Johntz"). Danny Secrist ("Secrist") was employed by Helsel Construction which had contracted through The Framing Firm to perform renovation work on the United Building. The United Building had an elevator, designed and installed in the 1920s. The outer door to the elevator was wooden with small glass panes. Immediately behind those doors was a metal gate that slides across the opening of the elevator to allow access. The elevator was designed to operate with an operator stationed inside the car, but the doors could be opened from the outside if one had a key, or apparently any of a number of

---

1. "The pertinent facts are viewed in the light most favorable to the jury's verdict." *Hayes* v. *Price*, 313 S.W.3d 645, 648 (Mo. banc 2010).

small metal objects, that would bypass the safety mechanism. No elevator operator was employed. Secrist and others working on the renovation were given permission to use the elevator and instructed how to do so.

On November 3, 2008, Secrist gathered his materials he was going to take away from the worksite on the second floor and placed them in front of the elevator. The elevator operated in a way that a person was not able to call the elevator to the desired floor but instead had to go and retrieve the elevator on the floor where it was located. Secrist walked down to the first floor, where he believed the elevator was located, and found the outer door and gate to the elevator were closed. Secrist grabbed a bent wire that had been left there specifically for the purpose of opening the elevator door, stuck the wire in the key hole to jimmy the lock, opened the doors and gate, and stepped into the elevator shaft. Unbeknownst to Secrist, the elevator was not on the first floor and he fell down the shaft, landing in the basement below. As a result of the fall, Secrist sustained severe injuries.

Secrist filed suit on the theory of general negligence against Treadstone (Count I), L & H Renovations (Count II)[2] and Johntz (Count III). Secrist filed suit on the theory of premises liability against Treadstone (Count IV) and L & H (Count V). Finally, Secrist's wife, Erin Secrist ("Mrs. Secrist"), filed suit against Treadstone, Johntz, and L & H for loss of consortium. (Count VI). Counts I, III, IV and VI (the counts against Treadstone and Johntz) were tried to a jury, which returned a verdict in favor of Secrist against Treadstone on Counts I and IV, and in favor of Mrs. Secrist against Treadstone on Count VI. On Counts III and VI, claims against Johntz, the jury returned a verdict in Johntz's favor finding him zero percent liable for Secrist's injuries.[3] In finding against Treadstone in Counts I, IV and VI, the jury found Treadstone was twenty percent at fault and Secrist was at eighty percent fault. The Circuit Court reduced the jury's award of damages accordingly, which resulted in an award in favor of Secrist for $31,500 and in favor of Mrs. Secrist for $600.[4] Secrist and Mrs. Secrist (collectively "Appellants") appeal. Further factual details will be provided in the analysis section below as necessary.

In their sole point on appeal, Appellants argue the trial court erred in admitting Secrist's positive drug test result for marijuana reflecting a THC level of 50 ng/ml for the purposes of comparative fault and impeachment because Treadstone and Johntz failed to lay the foundation required by law for the admission of marijuana consumption and impairment evidence by not introducing evidence from which a jury could reasonably infer that Secrist had a sufficient level of marijuana in his system to be impaired at the time of the accident.

## Standard of Review

The Appellants claim that the evidence of his THC level was inadmissible on this

2. The record is unclear what happened with the claims against L & H Renovations, but these claims were not submitted to the jury and they are not a party to this appeal. Therefore we will not address them further.

3. While there were multiple counts in the petition, all claims were submitted under one verdict form. On that verdict form the jury found Defendant John Johntz to be 0% at fault, Defendant Treadstone LLC to be 20% at fault and Plaintiff Danny Secrist to be 80% at fault.

4. The jury verdict awarded Secrist $157,000 and Mrs. Secrist $3,000 in damages, before the application of the percentage of fault.

record, as a matter of law, because Treadstone failed to lay the foundation for its admission. Appellants argue that the proper standard of review of their point on appeal is *de novo* because they are arguing that, as a matter of law, the trial court could not allow the introduction of evidence concerning Secrist's THC levels without laying a proper foundation. In support of their argument, the Appellants cite two cases, *Scott v. Blue Springs Ford Sales, Inc.* and *State ex rel. Missouri Highway and Transp. Comm'n v. Roth.* See 215 S.W.3d 145, 173 (Mo.App.2007); 687 S.W.2d 662, 666 (Mo.App.1985). In *Scott*, this court stated that review of whether the foundation for an expert witness under section 490.065[5] was properly laid is subject to *de novo* review. Appellants also cite as support our statement in *Roth* that we review *de novo* whether expert witnesses have based their opinions on facts that have no probative value whatsoever. Neither scenario is comparable to the situation before us. Appellant does not challenge the witnesses' qualifications to testify as to the medical records, which showed THC in Secrist's system following this accident; they challenge whether the fact Secrist had THC in his system, without more, is relevant to either of the issues of comparative fault or impeachment.

Appellants argue that the foundation for the marijuana evidence was not properly laid by Treadstone making it inadmissible as being incompetent. "[Incompetent] is constantly used loosely as equivalent to 'inadmissible' on any ground. This use should be avoided." BLACK'S LAW DICTIONARY (9th ed.2009) (quoting JOHN H. WIGMORE, A STUDENTS' TEXTBOOK OF THE LAW OF EVIDENCE 36 (1935)). The mere use of the word "incompetent" does not change our standard of review when the essential question is whether the evidence was sufficiently relevant to be admissible.

■■■ "The trial court is accorded considerable discretion in ruling on the admissibility of evidence, particularly where a subjective determination of relevancy must be made." *Rock v. McHenry*, 115 S.W.3d 419 (Mo.App. W.D.2003) (citing *Woodiel v. Barclay Enters., Inc.*, 858 S.W.2d 247, 252 (Mo.App. S.D.1993)).

The admission or exclusion of evidence rests in the sound discretion of the trial court, and the court's decision will be reversed only if it constitutes an abuse of discretion. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* We review for prejudice, not mere error, and will reverse only if the error was so prejudicial that the defendant was deprived of a fair trial. *Elliott v. State*, 215 S.W.3d 88, 93 (Mo. banc 2007).

*Peters v. ContiGroup*, 292 S.W.3d 380, 392 (Mo.App. W.D.2009). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Elliott*, 215 S.W.3d at 93.

### Analysis

Before we begin, there is disagreement between the parties as to what is properly before this Court. According to Appellants, the evidence of Secrist's THC blood levels was admitted for both the issue of

---

**5.** All statutory citations are to RSMo 2000 as updated through the most recent cumulative supplement, unless otherwise indicated.

comparative fault and as impeachment evidence. According to Treadstone, the "Appellants misconstrue the trial court's ruling. The evidence of marijuana was never admitted by the court as being relevant to [Secrist's] fault, but instead to his credibility." A look at the trial transcript refutes Treadstone's position. Although at certain stages of the trial the trial court indicated that the evidence regarding Secrist's THC levels might only be admissible for impeachment, it is clear the court changed its position and explicitly allowed the evidence to come in for both impeachment purposes and for comparative fault. Appellant's counsel specifically asked, "But just so we're clear, you are going to allow him [defense counsel] to argue it [the THC evidence] as to fault?" The court responded, "I am." The transcript is perplexing in that the trial court did offer multiple times to consider a limiting instruction for the use of the THC evidence, which was never offered by Appellants, but we do not understand what type of limiting instruction the court could have contemplated when it explicitly ruled that the evidence could be considered with respect to comparative fault as well as impeachment. Regardless, Appellants are correct that the trial court allowed this evidence in for both comparative fault purposes and for impeachment, and that Treadstone used the evidence to argue in closing that Secrist was partially at fault based on this evidence.

### Comparative Fault

We will first address the admission of the evidence for the purposes of comparative fault. "To be admissible, evidence must be logically and legally relevant." *Claus v. Intrigue Hotels, LLC*, 328 S.W.3d 777, 786 (Mo.App. W.D.2010) (quoting *Eckerd v. Country Mut. Ins. Co.*, 289 S.W.3d 738, 743 (Mo.App. E.D.2009)).

Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case.

*State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002). "Legal relevance is a determination of the balance between the probative and prejudicial effect of the evidence." *Claus*, 328 S.W.3d at 787 (quoting *Glover v. State*, 225 S.W.3d 425, 429 (Mo. banc 2007)). Appellants contend that on the issue of fault providing evidence regarding Secrist's THC levels, standing alone, is not *logically relevant* in that without more information lends itself to rank speculation. We agree.

Our case law has consistently recognized a substantive distinction between the evidence required to sustain a finding that a person is impaired as a result of the ingestion of alcohol verses other drugs. *See State v. Friend*, 943 S.W.2d 800 (Mo.App. W.D.1997); *State v. Clarkston*, 963 S.W.2d 705 (Mo.App. W.D.1998). A prima facie case for impairment from alcohol has been set by statute and is established when blood alcohol concentration reaches eight-hundredths of one percent. Section 577.012.1; *see also Friend*, 943 S.W.2d at 802. The effects of excessive consumption of alcohol are well-known and relatively easy to identify and include, among other things, "loss of balance and bloodshot eyes, and frequently is identified by its odor." *Friend*, 943 S.W.2d at 802. Drug impairment, however, is different. "Different drugs have varying effects on behavior" and "do not necessarily produce readily recognizable symptoms and behavior patterns." *Id.*

In *Friend*, this court considered whether there was sufficient evidence to support the submission to the jury that the defen-

dant was intoxicated by drug ingestion. *Id.* at 802–03. The defendant was stopped for driving erratically and there was evidence that he was exhibiting bizarre behavior. *Id.* at 801. A blood test revealed that the defendant had methamphetamines in his system. *Id.* "There was no testimony as to the amount of methamphetamine in his system, the effect of the methamphetamine on his driving ability, or whether it would cause the behavior the defendant exhibited." *Id.* We held that the evidence was insufficient to sustain a conviction, because there was "no evidence that the level of methamphetamines was sufficient to impair his driving ability." *Id.* at 803.

In *Clarkston*, the defendant challenged his conviction for driving while intoxicated. 963 S.W.2d at 707. At the scene of his accident, the defendant exhibited behaviors consistent with being intoxicated. The State charged him with "driving while intoxicated while under the influence of alcohol and a combination of alcohol and insulin." *Id.* at 708. The defendant told investigators that he had taken insulin at 7:00 in the morning and the accident had occurred later that night. *Id.* The State submitted an instruction to the jury that allowed the jury to find that the defendant was driving "under the influence of alcohol or a combination of alcohol and a drug or drugs." *Id.* at 710. In *Clarkston*, we found that there was no evidence of recent ingestion of drugs or that the level of the ingested drug could cause impairment. *Id.* at 713. We held that it was, therefore, error to submit the instruction because there was no evidence to support its submission. *Id.* While these cases are not conclusive of the issue currently before us (in both *Clarkston* and *Friend* the issue

was whether the evidence was sufficient to support an element of the offense for which the defendant was criminally charged) they are instructive as to the problems with admission of this type of evidence on the issue of fault or culpability without some testimony as to the effect a particular drug and the levels thereof may have on a particular person.

Somewhat closer to the issues before us, but still not on point, is *State v. Jones*, in which a toxicology report was entered into evidence at trial that showed the victim, who was involved in an altercation with the defendant, had ingested cocaine prior to his death and had a blood alcohol content of 0.21 percent. 322 S.W.3d 141, 143 (Mo. App.W.D.2010). At trial, the trial court excluded expert testimony, which was submitted as an offer of proof, as to the general effects of cocaine and alcohol consumption on an average person. *Id.* In the offer of proof, the expert admitted he did not know the drug history of the individual in question and his tolerance levels, as there are considerable variations between persons. *Id.* In *Jones*, we found the trial court did not abuse its discretion in excluding the testimony. *Id.* at 145. We reasoned that without evidence that indicates actual behaviors consistent with drug use, testimony as to the general effects of drug use (even with a toxicology report showing alcohol and drug levels), would not help the jury. *Id.*

There must be evidence beyond the mere fact that a drug was present in someone's system in a particular quantity before a reasonable inference can be made that the person is impaired therefrom. The fact that Secrist tested positive for 50 ng/ml of THC (marijuana) means nothing without context.[6] Certainly the average

6. While the record indicates this level was determined from a blood test, there is no indication if this was measured in whole blood, plasma or some other blood fraction which could also affect the meaning of the level found.

juror would have no knowledge as to what this number means as it relates to the level of impairment of the person in whose system it was found. It has been noted by other courts that THC may remain in the blood or urine for days if not weeks after marijuana use, and the physiological effects of marijuana use dissipate long before the THC leaves the system; therefore, without further evidence as to the significance of the particular levels of THC on a person's functioning, THC levels in the person's system are no indication of impairment therefrom. *See e.g., People v. Feezel,* 486 Mich. 184, 783 N.W.2d 67, 85 (2010); *State v. Latta,* 126 Ohio Misc.2d 1, 799 N.E.2d 245, 246 (Ohio Mun.2003). Also, evidence regarding abnormal behavior is not sufficient without some evidence that the behavior is consistent with identifiable symptoms of ingestion of the particular drug. *Friend,* 943 S.W.2d at 803. Popular stereotypes regarding the characteristics and behaviors of drug users are not sufficient in a court of law. Evidence of the level of drugs in the person's system is meaningless to the layperson until there is *some* evidence as to what effect those levels of that drug in a person's system would be expected to have on the individual in question. *Id.* Unlike with alcohol, where we have a statutory threshold that results in a presumption of impairment, no such standards currently exist with other drugs, legal or illegal. It is not the rule that any level of any drug in a person's system results in an automatic permissible inference of impairment.

We agree that it was error to admit the evidence of Secrist's THC levels for the purpose of establishing fault without more evidence to give the jury an indication as to: (1) what effect that level of that drug in the body would reasonably have on that individual; (2) that the behaviors exhibited by that person were consistent with having that drug and the amount thereof in his system; and (3) the proximity in time between when the drug was ingested and the events to which the impairment is relevant. See *Friend,* 943 S.W.2d at 803; *Clarkston,* 963 S.W.2d at 713, 322 S.W.3d 141, 145. There was no evidence here that the levels of THC in Secrist's system would result in a certain type or degree of impairment or that Secrist's behavior the day of the incident was consistent with impairment by marijuana ingestion.

Treadstone argues that Appellants should have (1) requested a limiting instruction; or (2) Secrist could have testified concerning his marijuana use. As previously mentioned, the trial court explicitly ruled that the evidence regarding Secrist's THC levels was proper with respect to the issue of comparative fault and, even though Treadstone denies this to be true, Treadstone did in fact argue that this evidence established that Secrist's negligence contributed to his own injury. Also, while it is true Secrist could have testified concerning his marijuana use, this has no relevance to whether admitting the evidence concerning THC levels independent of context was error. It was not his burden to make the evidence logically relevant, that burden remains with the proponent of the evidence. *State v. Allen,* 274 S.W.3d 514, 528 (Mo.App. W.D.2008). Treadstone further argues that comparative fault was not submitted in the verdict director, but the verdict director did explicitly allow the jury to assess comparative fault by inviting them to assess a percentage of fault to each party. These arguments are meritless. Therefore, the trial court abused its discretion when it admitted this evidence for the issue of comparative fault.

### Impeachment

Appellants also argue the admission of evidence regarding Secrist's

THC levels for the purpose of impeachment was error. We agree. It has long been the rule in Missouri courts that "[a]ny possible *impairment* of a witness's ability to recall is relevant to his credibility." *Zempel v. Slater*, 182 S.W.3d 609, 614 (Mo.App. E.D.2005) (emphasis added). In *State v. Marshall*, the Southern District of this court held "evidence that Defendant had *recently* ingested a pitcher of beer, an intoxicant, and *may have been under its influence during the arrest and booking* was relevant and admissible to impeach Defendant's alleged 'clear' memory of the events leading up to the altercation." 302 S.W.3d 720, 728 (Mo.App. S.D.2010) (emphasis added). The standard for the admission of evidence with respect to impeachment is not as strenuous as that for comparative fault; however there remains a threshold standard. As described previously, THC levels in the bloodstream are not alone an indication of impairment. The only reasonable conclusion one can draw from THC levels in the blood stream, without more, is that THC is in the blood. Anything beyond that is mere speculation. Evidence that THC is in the blood does not establish when the person was exposed to or ingested the marijuana, or whether the person was or is currently impaired as a result.

### Relief

 In order to obtain relief for the improper admission of this evidence for comparative fault and impeachment, Appellants must not only demonstrate trial court error but also that the error resulted in prejudice. *Elliott*, 215 S.W.3d at 93. "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *State v. Zink*, 181 S.W.3d 66, 73 (Mo. banc 2005). First, we will consider prejudice to Appellants with respect to Treadstone. There is no ques-

tion that there is a reasonable probability that this error prejudiced Appellants in relation to Treadstone. Treadstone used the evidence of Secrist's THC levels to argue that part of the fault for the accident belonged to Secrist. The jury verdict ultimately awarded Secrist $157,000 and Mrs. Secrist $3,000 in damages. However, the jury found Treadstone to be at twenty percent fault and Secrist to be at eighty percent fault. It is impossible to assess what impact this evidence had on the outcome of the trial but the improperly admitted evidence was adverse to Secrist and may have materially affected the outcome of the proceeding. *See KRP ex rel. Brown v. Penyweit*, 219 S.W.3d 829, 836 (Mo.App. W.D.2007). As such, we find that the improper admission of the evidence of Secrist's THC levels with respect to Treadstone likely resulted in prejudice to Secrist.

Treadstone argues that Appellants were not prejudiced because similar evidence was properly admitted in the form of testimony by Mike Johnson ("Johnson") who testified that Secrist had slurred speech, inferring that he was under the influence of an intoxicant. *See State v. Edberg*, 185 S.W.3d 290, 294 (Mo.App. S.D.2006). Considering that no evidence was ever introduced as to the effects of marijuana consumption through expert testimony or otherwise, we cannot equate evidence of the mere presence of THC in Secrist's system to testimony concerning slurred speech as "similar evidence." Without more, this argument has no merit.

 Appellants ask us to remand this case back to the trial court so they can have a new trial as to their claims against both Treadstone and John Johntz. The verdict here was unequivocally in favor of Johntz as the jury found Johntz to be zero percent at fault. For this reason, we do

not believe that Secrist has shown prejudice from the admission of this evidence with respect to Johntz. "The jury necessarily must have concluded that the plaintiffs failed to establish at least one of the propositions necessary to return a verdict in their favor. Because of this conclusion, the jury was never required to reach the question of apportionment of fault." *Lee v. Mirbaha,* 722 S.W.2d 80, 84 (Mo. banc 1986). As was previously addressed, all of the claims were submitted to the jury under one verdict form. The jury found Defendant John Johntz to be 0% at fault, Defendant Treadstone LLC to be 20% at fault and Plaintiff Danny Secrist to be 80% at fault. Because the jury found that Appellants failed to establish that Johntz had any fault in the cause of Appellant's injuries, the improper evidence of Secrist's marijuana use would have no affect on Johntz fault. Therefore, the improper admission of evidence bearing on the weight of fault between Secrist and Johntz is harmless error.

The cause must be remanded for a new trial with respect to defendant Treadstone as to all issues, for "in a comparative fault case, the issues of fault and damages are blended and interwoven, and 'it would be a rare case in which a jury would not consider the effect of its determination of percentages of fault in terms of the damages to be eventually awarded to the plaintiff.' " *Talley v. Swift Transp. Co.,* 320 S.W.3d 752, 756 (Mo.App. W.D.2010) (quoting *Phillips v. Lively,* 708 S.W.2d 369, 373 (Mo.App. W.D.1986)). "The appellate court has the power to affirm the trial court's order and remand with further instructions." *Id.* (quoting *Courtney v. City of Kansas City,* 775 S.W.2d 269, 273 (Mo. App. W.D.1989)). Accordingly, we remand the case with instructions that the issues of both damages and liability be retried.

Appellants Point on Appeal is granted in part.

### Conclusion

The Judgment of the trial court is hereby affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

All concur.

