

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| JOE FRAZIER, | ) | |
| | ) | |
| Appellant, | ) | WD77294 |
| | ) | |
| v. | ) | OPINION FILED:  April 14, 2015 |
| | ) | |
| CITY OF KANSAS CITY, MISSOURI, | ) | |
| ET AL., | ) | |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Sandra Midkiff, Judge

Before Special Division:  Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and
Zel M. Fischer, Special Judge

Joe Frazier ("Frazier") was injured when the car in which he was riding was struck by a vehicle that was fleeing the police in a high speed pursuit.  Frazier sued the city of Kansas City ("City"), the Kansas City Missouri Board of Police Commissioners ("Board") through its individual board members, and Officer Ryan Swope ("Officer Swope") (collectively, the "Defendants").  Frazier's cause of action against the Defendants consisted of three counts in which he alleged negligence, negligence *per se*, and recklessness.  Before trial, the trial court granted the Defendants' motion for partial summary judgment as to some counts, leaving only the count of recklessness.  A trial

took place on the allegations of recklessness in the Circuit Court of Jackson County after which the Defendants were found not liable for Frazier's injuries. The trial court entered judgment for the Defendants and denied Frazier's motion for a new trial. This appeal follows.

For reasons fully explained below, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

On July 6, 2010, officers with the KCPD Metro Property Crimes Task Unit were conducting surveillance on a stolen truck parked at a house in Kansas City, Missouri. KCPD Squad #280 was on stand-by to assist. A man later identified as Brian Rimmer ("Rimmer") left the house, got into the stolen truck, and drove to a Wal-Mart in Raytown. The KCPD followed Rimmer to the Wal-Mart parking lot. While Rimmer sat in the stolen truck in the parking lot, officers approached him. Before they reached Rimmer, he sped out of the parking lot, striking an occupied parked car, and then proceeded westbound in the eastbound lanes of 350 Highway.

Sgt. Jason Rusley ("Sgt. Rusley") was the controlling supervisor at the scene. As Rimmer continued driving into oncoming traffic on 350 Highway at a high rate of speed with no police officers behind him, Sgt. Rusley made the decision to allow pursuit by the use of the police helicopter, stop sticks,[2] and any patrol car with lights and siren that could safely get behind the stolen truck. Over the police radio, he gave permission for officers to pursue the stolen truck, stating he needed cars with stop sticks to get in front of

---

[1] "In reviewing a circuit court's ruling resulting in either the grant or denial of a new trial, appellate courts view the evidence in the light most favorable to the circuit court's order." *March v. Midwest St. Louis, L.L.C.*, 417 S.W.3d 248, 253 (Mo. banc 2014) (citation omitted).

[2] Stop sticks are tire deflation devices used to disable a vehicle that is being pursued by the police.

2

Rimmer. Sgt. Rusley testified that he gave permission for the pursuit because Rimmer presented a clear and immediate danger to the safety of others. The police helicopter was able to locate and follow Rimmer's vehicle.

Officer Swope first observed Rimmer as Rimmer drove westbound in the same direction as the flow of traffic on 63rd Street. With his lights and siren activated, Officer Swope turned west from Jackson onto 63rd Street, in pursuit of Rimmer. Officer Swope observed Rimmer turn north into the southbound lanes of Highway 71. With his lights and siren still activated, Officer Swope followed Rimmer onto Highway 71. Officer Swope drove his patrol car on the shoulder of the highway, remaining several hundred feet behind Rimmer. Rimmer continued northbound in the southbound lanes of Highway 71. At the intersection of Highway 71 and 55th Street, Rimmer crashed into a vehicle in which Frazier was riding as that vehicle crossed through the intersection. Officer Swope's vehicle did not come into contact with the vehicle in which Frazier was a passenger. Rimmer was arrested and later pled guilty to multiple felonies arising out of the events occurring that day, including four counts of the class C felony of assault in the second degree (one count for each person who was injured as a result of the accidents that occurred during the chase, including Frazier), one count of the class C felony of tampering with a motor vehicle, one count of the class D felony of resisting arrest, one count of the class D felony of leaving the scene of an accident and one count of the class D felony of operating a vehicle with a suspended or revoked license.

Frazier filed a three-count petition for civil damages against Officer Swope, the City and the individual members of the Board in which he alleged negligence, negligence

3

*per se* and recklessness. Before trial, the court granted Defendants' motion for partial summary judgment, leaving only the count of recklessness to be submitted to the jury.

At trial, Frazier presented evidence that Officer Swope caused the accident by recklessly pursuing Rimmer. Chuck Drago, a thirty-two year veteran police officer and former Chief of Police of Oviedo, Florida, testified as an expert on police pursuit tactics on behalf of Frazier. After serving as police chief for three years, Drago was appointed to a state agency overseeing business licensing for the state of Florida. He then went on to serve as Senior Law Enforcement Advisor to the governor. When the governor left office, Drago started his own consulting firm.

Drago based his opinions on his review of the "dash-cam" footage from Officer Swope's vehicle and the radio transmissions between the officers. He testified that he assumed Rimmer saw Officer Swope when he commenced the pursuit and that Rimmer's reckless driving was a result of the pursuit. Drago, however, did not know for certain whether Rimmer was aware that he was being pursued at various points, or whether he was aware of the helicopter overhead. Defendants presented evidence that Officer Swope did not violate any KCPD protocols in pursuing Rimmer and alleged that Officer Swope was not the proximate cause of the collision.

The jury returned a verdict for Defendants and the trial court entered judgment accordingly. Frazier filed a motion for a new trial arguing that various evidentiary rulings were erroneous and that the verdict was against the weight of the evidence. The trial court denied the motion. This appeal follows.

## ANALYSIS

In his eight points raised on appeal, Frazier alleges error by the trial court in (1) granting Defendants' motions for partial summary judgment regarding his claims for negligence, (2) excluding portions of the "dash-cam" video evidence, (3) excluding testimony regarding Officer Swope's prior violations of KCPD protocols, (4) admitting evidence of the fleeing suspect's plea of guilty to assault in the second degree by use of a vehicle, (5) admitting evidence of the amount of Frazier's medical bill "write-offs," (6) overruling Frazier's *Batson*[3] challenges, (7) denying Frazier's motion for a new trial because the verdict was against the weight of the evidence, and (8) denying his motion for a new trial based on cumulative error.

## POINT I

In Point I, Frazier claims the trial court erred in granting Defendants' motions for partial summary judgment regarding the counts of negligence because the rulings were based on the court's finding that there was no evidence that Officer Swope's actions were the proximate cause of the accident.

### Standard of Review

Our review of the trial court's grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.*

---

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986).

Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 377. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* at 376. A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action; (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

**Discussion**

Frazier argues that the court erred when determining that the material facts of the case were not in dispute and that there was no evidence that Officer Swope was the proximate cause of the accident that injured Frazier. He contends that whether Swope's pursuit of the fleeing suspect caused the accident was a factual dispute and should have been submitted to the jury. Defendants, however, maintain that the trial court was correct in following the controlling precedent established by our Supreme Court in *Stanley v. City of Independence*, 995 S.W.2d 485 (Mo. banc 1999) and granting summary judgment.

After reviewing the evidence submitted on summary judgment, the trial court found our Supreme Court's holding in *Stanley* to be controlling and, therefore, granted summary judgment in favor of Defendants on Frazier's claims of negligence and

6

negligence *per se*. The court concluded that it was "constitutionally bound to follow the *Stanley* decision as the last controlling and on-point decision of the Missouri Supreme Court."

**A. Missouri Supreme Court Precedent Set in *Stanley v. City of Independence***

In *Stanley*, the court reviewed a case involving facts very similar to those in the case at bar. There, the fleeing suspect was driving a van that matched the description of a vehicle involved in a robbery thirty minutes earlier. *Id.* at 486. When the van was spotted by Officer Hill, he attempted to initiate a traffic stop by turning on the emergency lights of his marked patrol car and giving a "quick yelp" of the siren. *Id.* The van did not yield; instead, it fled and Officer Hill pursued activating the siren. *Id.* The officer followed the van through a residential neighborhood and on various surface streets at speeds of approximately 55 miles per hour. *Id.* As the fleeing van approached an intersection, the traffic in its lane was stopped at a stoplight. *Id.* The van veered into the oncoming lane of traffic at nearly 70 miles an hour. *Id.* Michael and David Stanley were traveling in their vehicle, approaching the same intersection from the opposite direction. *Id.* They were in the proper lane of traffic and attempted to get out of the way of the fleeing van. *Id.* Their vehicle was struck by the van, and both men were killed. *Id.* At the moment of impact, Officer Hill was 191 feet behind the van. *Id.* The entire duration of the pursuit lasted 45 seconds. *Id.*

The plaintiffs alleged that the pursuing officer was negligent in following the suspect and that his pursuit proximately caused the accident. In order to establish proximate cause, the plaintiff must show that the injury was the "natural and probable

7

consequence of the defendant's negligence." *Id.* at 488 (citation omitted). The Missouri Supreme Court concluded that the pursuing officer's conduct was not a proximate cause of the collision, and explained:

> The suspects in the van made the initial decision to flee, sped through red lights and in the wrong lane of traffic, and collided with the decedents. Any negligence by [O]fficer Hill is connected to the plaintiffs' injury solely through the conduct of the fleeing van. Thus, the only conceivable causal link between the officer's alleged negligence and the collision is the conjectural effect of his pursuit on the pursued vehicle. Shortly after initiating the pursuit, the officer observed, "this guy is going nuts on us." There is nothing other than speculation to reach a conclusion that the officer's conduct was a "cause of the collision." Put another way, there is no way to tell whether the collision would have been avoided if the officer had abandoned the pursuit after initiating it. Thus, there is no factual basis to support a finding of proximate cause.

*Id.*

It further reasoned that because "there is no way to tell whether the collision would have been avoided if the officer had abandoned the pursuit after initiating it . . . there is no factual basis to support a finding of proximate cause." *Id.* It then affirmed the grant of summary judgment in favor of the defendants and concluded that without a causal link between the pursuing officer and the collision, there were no facts to support a finding of proximate cause. *Id.*

**B. Trial Court's Application of *Stanley v. City of Independence* to Frazier's Facts**

After applying the holding of *Stanley* to the nearly identical undisputed facts in the case at bar, the trial court held that, just as in *Stanley*, the evidence did not support a causal link between the conduct of Officer Swope and the collision. Indeed, the trial court concluded that "the only conceivable causal link between Officer Swope's alleged

8

negligence and the collision is the conjectural effect of his pursuit on the pursued vehicle." The trial court reasoned that the absence of a causal link made summary judgment proper, stating that "Plaintiff cannot, as a matter of law, show that Officer Swope, as a pursuing officer that did not collide with Plaintiff, was the proximate cause of Plaintiff's injuries."

## C. This Court's Application of *Stanley* to Facts in *Dilley v. Valentine*

In *Dilley*, a fleeing suspect drove erratically while being briefly pursued before crashing into a vehicle driven by the plaintiffs. *Dilley v. Valentine*, 401 S.W.3d 544, 547 (Mo. App. W.D. 2013). This court found that the facts were very similar to those in *Stanley*: the officer was pursuing a fleeing suspect with lights and siren activated, the officer's patrol car was not involved in the accident, the patrol car was 120 feet behind the suspect's car at the time of the accident, the duration of the pursuit was 120 seconds, and speeds of 50-55 miles an hour were reached. *Id.* at 549. We determined that Stanley was controlling on Dilley's negligence claims and held that whether "the collision would have been avoided had Officer Valentine abandoned the pursuit is based only on speculation." *Id.*

## D. Frazier's Attempt to Distinguish *Stanley* and *Dilley* Based on Duration of the Car Chases Involved

At oral argument, Frazier argued that *Stanley* is not controlling in this case as it is distinguishable based on the duration of the car chase involved. Frazier contends that the longer the chase, the greater the negligence on the part of the officer becomes because the chances of a collision increase the longer the chase continues. Frazier thus contends that

9

where police pursuits last longer than the 45 second chase in *Stanley*, proximate cause turns into a jury issue. In the case at bar, the chase lasted approximately 120 seconds from when Officer Swope made visual contact with Rimmer's vehicle to when Rimmer crashed into Frazier's vehicle.[4]

In support of his duration argument, Frazier cites *Moyer v. St. Francois Cnty. Sheriff Dep't*, 449 S.W.3d 415 (Mo. App. E.D.) which he contends should preclude the application of *Stanley* to the facts at hand. In *Moyer*, a Francois County Sheriff's deputy stopped a vehicle displaying stolen license plates. *Id.* at 416. After the deputy asked the driver to step out of the vehicle, the driver fled the scene, sparking a ten-mile pursuit reaching speeds of up to 120 miles per hour. *Id.* The chase ended when the suspect's vehicle collided with the plaintiffs' vehicle. The deputy's vehicle was not involved in the collision. *Id.* After the plaintiffs filed a negligence action against the county, the county filed a motion for summary judgment arguing that it was entitled to judgment as a matter of law because the deputy was not the proximate cause of the accident or of Plaintiffs' injuries. *Id.* at 417. The trial court granted summary judgment, finding no factual basis to support proximate causation. *Id.*

On appeal, the Eastern District of this court, over dissent, noted that "proximate cause" referred to the "reasonable and probable consequence of the act or omission of defendant" citing *Sanders v. Ahmed*, 364 S.W.3d 195, 210 (Mo. banc 2012) but reiterated that "the defendant's conduct must simply be a contributing cause of the plaintiff's injury

---

[4] Although Frazier argued that there was a factual dispute between the parties as to whether the car chase lasted seven minutes or whether it lasted two minutes, Drago testified that Officer Swope's vehicle did not begin to pursue Rimmer until Officer Swope reached 63rd and Jackson. Frazier conceded at oral argument that the duration of the chase from that location to the point of impact was approximately two minutes.

10

rather than the sole cause . . ." *Id.* (citing *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 339 (Mo. App. E.D. 2000) (referring to what is required to make a *prima facie* showing of causation; i.e., that the defendant's negligent conduct more probably than not was the cause of the injury)). It then went on to distinguish its facts from *Stanley* and *Dilley*.

The only distinguishing facts are the differing durations of the pursuits in each case. In *Stanley*, the pursuit lasted 45 seconds; in *Dilley*, the pursuit lasted approximately 120 seconds; in *Moyer*, where the distance traveled was as long as ten miles at speeds up to 120 miles per hour, the pursuit lasted approximately 300 seconds; and here, as in *Dilley,* Officer Swope's pursuit of Frazier lasted 120 seconds.[5] The *Moyer* court reasoned that, unlike cases that involve a shorter pursuit such as *Stanley* and *Dilley*, "common sense supports an inference that, as the time and distance between an officer and a fleeing suspect grows, the more likely it becomes that the suspect will cease fleeing in a reckless manner." *Moyer*, 449 S.W.3d at 418. The *Moyer* court found *Dilley* to be "factually indistinguishable" from *Stanley* but distinguished both from its facts based solely on the length of the pursuit. We, however, find *Dilley* to be on point and not distinguishable from the facts at hand. 401 S.W.3d 544. In sum, we find no distinction in the duration of pursuit, nor in any other significant fact that would make the application of *Dilley* and *Stanley* inappropriate to the facts in the case at bar.[6]

---

[5] Frazier has not alleged or established that Rimmer was aware that he was being pursued by the police helicopter, nor does he allege that the helicopter played a role in causing the accident.

[6] In the case at bar, Rimmer fled in his vehicle upon seeing officers on foot approaching him in a parking lot. He struck an occupied vehicle and proceeded to drive at a high rate of speed, going the wrong way on a divided highway for approximately five minutes before Officer Swope even began his pursuit of the vehicle. These facts support a finding that the cessation of the pursuit by Officer Swope would have had little impact on Rimmer's driving.

11

**E. Frazier's Attempt to Distinguish *Stanley* Based on Admission of Expert Testimony**

In addition to the differing chase durations, Frazier argues that his expert's testimony distinguishes this case from *Dilley* and *Stanley* in that his expert established genuine issues of material fact thus making proximate cause a factual jury issue. Frazier's expert, Drago, opined that Officer Swope negligently violated KCPD procedures when he initiated the chase and that his "failure to follow policy and national standards, his reckless disregard for the safety of the public, eventually *caused* the accident." (Emphasis added). Drago concluded that "*the police caused Mr. Rimmer to drive in the manner in which he drove* for the entirety of the pursuit until the crash." (Emphases added).

The procedures and protocol governing the initiation of a vehicle pursuit are outlined in the KCPD Procedures and Protocol manual, Annex B, titled "Police Vehicle Pursuit Procedure." Drago opined that the following section was violated by Officer Swope and that the violation made his actions negligent and reckless:

C. Initiating or Continuing Pursuit

    1.    Officers will not initiate a vehicle pursuit unless they determine that there is reasonable belief that the suspect presents a clear and immediate danger to the safety of others. Factors involved in this decision may include the commission of a dangerous felony. This determination should be continually evaluated during the pursuit. If the officer decides to initiate a pursuit, Code One Operation will be utilized throughout the entire duration of the pursuit.

        NOTE: Officers **will not** initiate a vehicle pursuit if the suspect vehicle is a stolen auto **unless** it has been involved in a dangerous felony. This prohibition includes situations such as a serious traffic

12

violation and DUI's, except where the suspect vehicle presents a clear and immediate danger to the safety of others.

Frazier argues that there was no dangerous felony to justify the pursuit of Rimmer in the stolen vehicle. He also maintains that the situation was not one of a "clear and immediate danger to the safety of others" but one that the police created by pursuing Rimmer. He concludes that Officer Swope violated KCPD protocols because Frazier did not present a clear and immediate danger to others.

The uncontroverted facts, however, as stated in both motions for summary judgment and admitted by Frazier, do not support this conclusion. The evidence here establishes that Rimmer was driving erratically before being pursued and was creating a clear and present danger to the public prior to the pursuit being initiated. Rimmer crashed into an occupied vehicle before he left the Wal-Mart parking lot, and began driving the wrong way on a divided highway. It was after these events that the pursuit was initiated.

As Rimmer drove at a high rate of speed on Highway 350, traveling the wrong direction on a divided highway, the controlling commander, Captain Wood, and Sgt. Rusley determined that, because the vehicle was traveling the wrong way and then "continued going the wrong way even once the divided highway was no longer divided," officers should attempt to use stop sticks to disable the vehicle. They called for any officer that could safely get behind the vehicle to begin pursuit.

A police helicopter joined the pursuit by following Rimmer as he sped through city streets and reporting his location to officers on the ground. There was no evidence

13

that Rimmer was ever aware of the helicopter's presence. Officer Swope remained several hundred feet behind Rimmer as Rimmer drove the wrong direction on Highway 71 (another divided highway) and eventually collided with Frazier's vehicle at an intersection.

The determination of whether proximate cause exists is a judicial function. *Kilmer v. Mun*, 17 S.W.3d 545, 552 n.19 (Mo. banc 2000). The trial court concluded that Drago's opinion was based on conjecture and speculation. Drago testified that he *assumed* Rimmer saw Officer Swope when he commenced the pursuit and that Rimmer's reckless driving was a result of the pursuit. Drago, however, *did not know for certain* whether Rimmer was even aware that he was being pursued at various points, or whether he was aware of the helicopter overhead. The court further found that Officer Swope was not the proximate cause of the accident; rather, the actions of Rimmer were the proximate cause of the accident. It concluded that, with the causation element negated, Frazier could not prevail on his negligence counts. Indeed, a defendant may establish a right to judgment as a matter of law by showing facts that negate any one of the elements of the claimant's cause of action. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381.

Our Supreme Court's holding in *Stanley* is controlling on this point. We find no error in the trial court's grant of partial summary judgment as to the negligence and negligence *per se* claims. Point I is denied.

## POINT II

In Point II, Frazier argues that the trial court erred when it excluded the first portion of Officer Swope's dashboard camera ("dash-cam") video from evidence in the

14

trial on the remaining count of recklessness. He argues that, although the first portion of the video is prior to Officer Swope encountering Rimmer's vehicle, it should have been admitted as evidence of Officer Swope's state of mind leading to the pursuit. The dash-cam video in question begins when Officer Swope received the call for a pursuit of Rimmer's vehicle and continues until the end of the pursuit. The trial court excluded the portion of the video of Officer Swope driving from the time he received the call until he first encountered Rimmer's vehicle. The trial court allowed the jury to view the portion of the video beginning from Officer Swope's first visual of Rimmer's vehicle to the accident which ended the pursuit.

## Standard of Review

We review the trial court's admission and exclusion of evidence for an abuse of discretion. "The admission or exclusion of evidence rests in the sound discretion of the trial court, and the court's decision will be reversed only if it constitutes an abuse of discretion." *Secrist v. Treadstone, LLC*, 356 S.W.3d 276, 280 (Mo. App. W.D. 2011) (citation omitted). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* (citation omitted). "The trial court is accorded considerable discretion in ruling on the admissibility of evidence, particularly where a subjective determination of relevancy must be made." *Id.* (citation omitted).

We employ this same standard of review for Points II, III, IV and V and it will not be repeated therein.

15

**Discussion**

Frazier contends that because Officer Swope's state of mind was relevant to whether he was acting recklessly in his pursuit of Rimmer, the dash-cam video should have been admitted in its entirety. The trial court disagreed and admitted only the portion starting from the point in time when Officer Swope first encountered Rimmer's vehicle.

"To be admissible, evidence must be both logically relevant and legally relevant." *Mansfield v. Horner,* 443 S.W.3d 627, 651 (Mo. App. W.D. 2014) (citation omitted). "Evidence is logically relevant if it make[s] the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (citation and internal quotation marks omitted). "Legal relevance, on the other hand, concerns the balance between the probative value and the prejudicial effect of the evidence." *Id.* (citation omitted). "That balancing requires the trial court to 'weigh the probative value, or usefulness, of the evidence against its costs, specifically the dangers of unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence.'" *Id.* (citation omitted). "If the cost of the evidence outweighs its usefulness, the evidence is not legally relevant and should be excluded." *Id.* (citation omitted).

Here, the court reasoned that the video footage from before Officer Swope first saw the vehicle driven by Rimmer was irrelevant as to whether Officer Swope's pursuit of Rimmer recklessly caused Rimmer to collide with the vehicle in which Frazier was riding. The court stated that since Frazier was claiming that the police pursuit caused Rimmer's erratic driving, "any action of Officer Swope unbeknownst to Mr. Rimmer

16

could not have caused or directly contributed to cause Mr. Rimmer's erratic driving and, thus, the ultimate collision between Mr. Rimmer and Plaintiff." It concluded that any evidence of Officer Swope's driving prior to being in direct pursuit of Rimmer was "not legally or logically relevant to any claim."

Frazier argues that the court erred in this determination because Officer Swope's driving prior to encountering Rimmer was probative as to his claim of Officer Swope's recklessness. In support, Frazier cites two criminal cases where evidence of erratic driving before a collision was admitted into evidence. In *State v. Feger*, 340 S.W.2d 716 (Mo. 1960), the defendant was charged with manslaughter for causing an accident while intoxicated and driving erratically. The court allowed the evidence of defendant's erratic driving from before the collision because when one of the parties is charged with being intoxicated before the accident, "the court may admit testimony as to the manner in which such party was driving his motor vehicle a substantial distance from the place of the accident for the purpose of substantiating the charge." *Id.* at 725 (citations omitted). The erratic driving was admissible to establish that the defendant's ability to operate a vehicle was impaired by the consumption of intoxicants.

Frazier also relies on *State v. Coates*, 862 S.W.2d 418 (Mo. App. S.D. 1993). In *Coates*, the conduct of a driver accused of drinking and driving, that included swerving, speeding and running stop signs before a collision, was likewise admitted into evidence. The facts of these cases are not analogous to those here and we fail to discern anything useful from them applicable to the civil matter currently before us.

17

In further support of his contention that the dash-cam video was relevant, Frazier relies on a statement originating in a torts hornbook that "recklessness looks to the tortfeasor's state of mind." *Hatch v. V.P. Fair Foundation, Inc.*, 990 S.W.2d 126, 139 (Mo. App. E.D. 1999) (citing WILLIAM L. PROSSER & W. PAGE KEETON, PROSSER AND KEETON ON TORTS 211 (5th ed. 1984)). He then cites a third case for the proposition that the "state of mind is a continuing condition that may be proved *by statements* evidencing state of mind either before or following a relevant time period." *Haynam v. Laclede Elec. Coop., Inc.*, 827 S.W.2d 200, 204-05 (Mo. banc 1992) (emphasis added). However, Frazier makes no argument as to what "statements" were made by Officer Swope in the excluded portion of the video. Further, Frazier fails to establish how the actions of Officer Swope prior to Rimmer even being aware of his presence could have caused Rimmer to take any actions. Without more, we fail to find *Haynam* persuasive. The lack of legal support for Frazier's position, combined with Drago's opinion that Officer Swope caused Rimmer to drive erratically only after he became involved in the pursuit at 63rd Street and Jackson, supports the trial court's decision to exclude the first portion of the dash-cam video.

As a subpart of this argument, Frazier argues that he was prejudiced by the trial court's ruling that only part of the video could be presented because the court's ruling came on the morning of trial and involved his first witness. The court had previously ruled that the entire video would be admissible, yet reversed itself after the Defendants filed a renewed motion *in limine* a week before trial. Frazier, however, did not include an allegation of prejudice in his Point Relied On. We do not consider an argument not

18

preserved in the Point Relied On. *Bellemere v. Cable-Dahmer Chevrolet, Inc.*, 423 S.W.3d 267, 273 (Mo. App. W.D. 2013) (citation omitted).

Finally, a trial court has the right to confine testimony to the time periods it deems relevant. *Dunham v. Estate of Hamilton*, 718 S.W.2d 152, 156 (Mo. App. W.D. 1986) (citation omitted). "Where evidence is excluded, the issue is not whether the evidence was 'admissible,' it is whether the trial court abused its discretion in excluding it." *Govreau v. Nu-Way Concrete Forms, Inc.,* 73 S.W.3d 737, 743 (Mo. App. E.D. 2002) (citation and quotation marks omitted). While we would affirm the trial court's admission of this entire video to give the jury a full picture of all events leading up to the accident, we do not find that the exclusion of the first portion of the video constitutes an abuse of discretion.

Because the court's reasoning was not against the "logic of the circumstances," it was not an abuse of discretion. *See Secrist*, 356 S.W.3d at 280 (citation omitted). Point II is denied.

## POINT III

In Point III, Frazier contends that the trial court erred in excluding testimony regarding Officer Swope's prior violations of KCPD protocols. He contends that the excluded testimony was "relevant and probative" to his claim of recklessness.

### Discussion

Frazier attempted to admit evidence of a disciplinary report involving Officer Swope concerning five prior violations of KCPD protocol. The violations did not involve the collision of July 6, 2010 between Rimmer and Frazier; rather, they concerned a

19

December 7, 2008 traffic stop conducted by Officer Swope. The violations at issue included: (1) putting his hands in his pockets while at the car, (2) approaching the car without waiting for back-up, (3) turning off his microphone while speaking to the occupants of the vehicle, (4) driving too fast without using his emergency equipment, and (5) allowing one of the occupants to drive the vehicle away even though he/she was unlicensed.

Prior to trial, the Defendants filed a motion *in limine* to exclude evidence, *inter alia*, of KCPD protocol violations involving Officer Swope that were unrelated to the accident at hand. The Defendants, citing *Maugh v. Chrysler Corp.*, 818 S.W.2d 658, 661 (Mo. App. W.D. 1991), argued that previous violations were collateral matters and impeachment and contradiction are not allowed on collateral matters. They maintained that a previous violation of policies unrelated to the accident and not involving police pursuits, was a collateral matter. "The test as to whether a matter is collateral . . . is whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as a part of his case." *Benedict v. N. Pipeline Constr.*, 44 S.W.3d 410, 427 (Mo. App. W.D. 2001) (citations omitted). "It is not error to exclude offers to impeach on immaterial or collateral matters." *Peters v. ContiGroup*, 292 S.W.3d 380, 392 (Mo. App. W.D. 2009) (citation omitted).

The court granted Defendants' motion *in limine* and excluded Officer Swope's previous unrelated violations of protocol. Its order did not set forth its reasoning. At trial, Frazier made an offer of proof and conducted a *voir dire* examination of Officer Swope outside the presence of the jury. The court did not alter its previous ruling.

20

Frazier argues that the court's ruling was erroneous because the evidence went to (1) Officer Swope's "credibility and bias" concerning whether he violated protocol or any procedures on July 6, 2010, and (2) Officer Swope's state of mind on July 6, 2010. As to the first contention of error, when questioned about the prior protocol violations, Officer Swope admitted to each of the alleged violations. Although Frazier now argues that evidence of Officer Swope's previous violations was relevant to cast doubt on his truthfulness, such evidence would cast doubt on Officer Swope's truthfulness or veracity only if he were to have been found to lie, deny, hide, or attempt to cover-up the violations. "'Contradiction' is not the same as 'impeachment.'" *Feiteira v. Clark Equip. Co.,* 236 S.W.3d 54, 63 (Mo. App. E.D. 2007). "'Impeachment' is directed to the credibility of a witness for the purpose of discrediting the witness and ordinarily furnishes no factual evidence, whereas 'contradiction' is directed to the accuracy of a witness' testimony and supplies additional evidence." *Id.* (citation omitted). Nothing in the proffered evidence contradicted anything that Officer Swope testified to at trial, and Frazier fails to explain how this evidence would impeach any actions or testimony by Officer Swope.

In addition to this argument, Frazier maintains that Officer Swope's violation of procedures in 2008 was relevant as to whether he did, in fact, violate procedures in the 2010 pursuit of Rimmer.[7] Notably, the court had evidence from several officers, as well as from Officer Swope, that no procedures were violated in the pursuit of Rimmer's

---

[7] Evidence of a past violation is not conclusive that a subsequent violation occurred. Although Frazier argues that past violations support his allegation of Officer Swope's reckless state of mind, the past violations do not resemble those at issue. Frazier fails to establish how these previous violations are relevant other than his blanket assertion that they somehow establish that he violated different procedures several years later.

vehicle. Frazier's expert, however, did testify that some procedures were violated during the pursuit based on his review of the dash-cam video from Officer Swope's vehicle. However, none of the violations testified to by Drago were similar, or in any way, related to the violations alleged in the 2008 report.

Evidence of previous violations that occurred two years earlier is collateral as they involved neither the same parties nor the same policy violations. There is no error in excluding collateral matters. *Peters*, 292 S.W.3d at 392. Moreover, Frazier did not need to prove previous violations in order to prove any element of his claims against the Defendants. *See Benedict*, 44 S.W.3d at 427. Point III is denied.

## POINT IV

In Point IV, Frazier argues that the trial court erred in admitting evidence that Rimmer pled guilty to assault in the second degree as a result of the collision "because such evidence invaded the province of the jury on causation" in that it "created the impression that Rimmer had already been adjudicated to be the cause of the accident at issue."

### Discussion

In response to Frazier's argument, Defendants maintain that Frazier was the first to introduce evidence on this issue to the jury. They further contend that the evidence was cumulative when Frazier later objected to Defendants presenting similar evidence to the jury. While Rimmer pled guilty to multiple felonies, the only conviction which was admitted into evidence was the charge based on the vehicular assault on Frazier.

22

Although we disagree with Defendants' characterization that Frazier "introduced" this evidence, it did come into evidence, without objection, during Defendants' cross-examination of Frazier when he stated that he had testified at Rimmer's sentencing hearing on the criminal charges. Frazier also testified that Rimmer had apologized to him. There was no objection to these questions. Thus, Frazier cannot now complain about the admission of Rimmer's criminal prosecution at a later point since he failed to object when the evidence was first presented. *Precision Elec., Inc. v. Ex-Amish Specialties, Inc.*, 400 S.W. 3d 802, 810 (Mo. App. W.D. 2013) (citation omitted).

Moreover, it was only after Frazier's testimony regarding Rimmer's sentencing hearing that the Defendants, later and over objection, were allowed to read to the jury the charge against Rimmer of assault in the second degree. At that point, the evidence was cumulative. "A party cannot be prejudiced by the admission of allegedly inadmissible evidence if the challenged evidence is merely cumulative to other evidence admitted without objection." *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 46 n.23 (Mo. App. E.D. 2013) (citing *Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 134 (Mo. banc 2007)).

In so holding, we are not persuaded by Frazier's reliance on *Nelson v. Holley*, 623 S.W.2d 604 (Mo. App. W.D. 1981), which held that a non-party's guilty plea to careless and reckless driving and of speeding in connection with the accident was inadmissible and properly excluded upon objection. This is because, in *Nelson*, the statement was excluded as inadmissible hearsay, which is not the basis of the objection in the instant case. *Id.* at 607. Thus, *Nelson* is inapposite. Point IV is denied.

23

**POINT V**

In Point V, Frazier contends that "the trial court erred in allowing the defendants to introduce evidence [of] the amount of write-offs on plaintiff's medical bills and in failing to grant plaintiff a new trial on the issue, because, under Missouri law, a credit or offset is, pursuant to RSMo. § 490.715.5, an affirmative defense which must be plead and in that defendants failed to plead an offset or credit as an affirmative defense."[8]

**Discussion**

Frazier argues that because the Defendants did not plead the affirmative defense of credit and off-set, it was error for the trial court to admit evidence of the amount of write-offs that his various medical providers undertook. Defendants argue that it was not necessary to plead the write-offs as an affirmative defense. Because the jury found for the defense on the issue of liability we do not have to reach this issue regarding damages.

"When a jury finds against the plaintiff on the issue of the defendant's liability, rulings on matters relating only to the amount of damages to which the plaintiff might be entitled to receive, if the defendant was liable, cannot be considered so prejudicial as to constitute reversible error." *Miller v. Riss & Co.*, 259 S.W.2d 366, 372 (Mo. 1953); *see also Lush v. Woods,* 978 S.W.2d 521, 525 (Mo. App. W.D. 1998); *Turner v. Norfolk & W. Ry. Co.*, 785 S.W.2d 569, 573 (Mo. App. W.D. 1990). "This authority is binding on this court as we are obligated to follow Supreme Court precedent." *Precision Elec.*, 400

---

[8] Although Frazier contends that the court erroneously denied his motion for a new trial, he neglects to offer support for or otherwise include this in the argument section of his brief. "When a party fails to develop a point relied on in the argument section, it is deemed abandoned." *Lack v. Payne*, 151 S.W.3d 862, 867 (Mo. App. S.D. 2004). Additionally, the inclusion of an additional allegation that the court erred in denying a motion for a new trial makes this point multifarious. *State v. Brightman*, 388 S.W.3d 192, 196 (Mo. App. W.D. 2012).

24

S.W.3d at 813 (where party affirmatively injects insurance coverage into evidence, a complaint by that party over the admission of insurance coverage after jury finds against it cannot later be basis for new trial).

Accordingly, because the issue of write-offs and credits affects only the amount of medical damages available to Frazier had the jury found that Defendants were liable for his injuries, and the jury made no such finding of liability, its admittance cannot be considered reversible error. Point V is denied.

## POINT VI

In Point VI, Frazier argues that the trial court erred in "overruling plaintiff's *Batson* challenges and in not granting plaintiff a new trial on the issue, because plaintiff, an African-American, timely raised his *Batson* challenges and, in that Defendants' proffered reasons for striking African-Americans from the jury were clearly pre-textual and the trial court's ruling resulted in no African-Americans sitting on the jury."

### Standard of Review

We review the trial court's ruling on a *Batson* challenge for clear error. *State v. McFadden*, 191 S.W.3d 648, 651 (Mo. banc 2006). A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.*

### Discussion

Frazier alleges that the trial court erred when it overruled his *Batson* challenges to the Defendants' use of preemptory strikes to eliminate three African-American venire members. He contends that although Defendants stated that they struck these venire

25

members because each had been arrested, the strikes were pretextual since Defendants did not strike other venire members who had also been arrested but were not African-American. Frazier further argues that as a result of the court's rulings on his *Batson* challenges, there were no African-Americans on the jury.

In *Kesler-Ferguson v. Hy-Vee, Inc.*, our Supreme Court reiterated the three-step procedure to be followed, as set forth in *State v. Parker*, 836 S.W.2d 930, 934 (Mo. banc 1992), when a party makes a *Batson* challenge in either a civil or criminal case.[9]  271 S.W.3d 556, 558-59 (Mo. banc 2008). First, an opponent of a preemptory challenge must identify the venire member struck by the proponent and identify the cognizable racial group to which the venire member belongs. *Id.* at 559 (citation omitted). In the second step, the burden shifts to the proponent of the strike to come forward with a race-neutral reason that is more than simply a denial of a discriminatory purpose. *Id.* (citation omitted); *see also State v. Collins,* 290 S.W.3d 736, 741 (Mo. App. E.D. 2009). "To be sufficient, the explanation need only be race-neutral, reasonably specific and clear, and related to the particular case to be tried." *Parker*, 836 S.W.2d at 934 (citation omitted). A 'race-neutral explanation' in the context of a *Batson* challenge simply means "an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). "This second step of the *Batson* challenge process does not require an explanation that is persuasive, or even plausible." *Collins*, 290 S.W.3d at

---

[9] In *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991), the United States Supreme Court extended its holding in *Batson* to apply to civil litigants. *Bowls v. Scarborough*, 950 S.W.2d 691, 700 n.4 (Mo. App. W.D. 1997) (citation omitted). "*Parker* remains the definitive statement of Missouri procedure in *Batson* cases." *Bowls*, 950 S.W.2d at 700 (Mo. App. W.D. 1997) (citing *House v. Mo. Pac. R.R.*, 927 S.W.2d 538, 541 (Mo. App. E.D. 1996)). The procedures set forth in *Parker* are applicable to both civil and criminal cases. *Id*.

741 (citation omitted). Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race-neutral. *Id.* at 741-42 (citation omitted).

Third, "assuming the striking party is able to articulate an acceptable explanation for the strike, the party asserting the *Batson* challenge then needs to show that the striking party's proffered reasons for the strikes are pretextual and that the strikes were racially motivated." *Benedict*, 44 S.W.3d at 419 (citation omitted). "In the third step, the circuit court may consider the credibility and demeanor of reasons proffered to support striking a member of the venire." *Kesler-Ferguson*, 271 S.W.3d at 559 (citation omitted). The court "must primarily consider the plausibility of the striking party's explanations in light of the totality of the facts and circumstances surrounding the case." *Benedict*, 44 S.W.3d at 420 (citations omitted).

In reviewing the three-step *Batson* process employed in this case, step one was met when Frazier timely raised *Batson* challenges to the Defendants' strikes of venire members 35, 46 and 50. In step two, Defendants had the burden to provide race-neutral reasons for each strike. As to member 35, Defendants stated that she had questioned whether being arrested meant just being in handcuffs or actually going to jail. She then confirmed that she had been arrested. Defendants had also determined from other records that she was unemployed. The court overruled the *Batson* challenge, finding that Defendants had stated a race-neutral reason to strike member 35. At that point, the burden shifted back to Frazier, and he failed to offer any information to support his

27

contention that the Defendants' reasons were pretextual. Frazier thus failed to meet his burden with regard to panel member 35.

As to panel members 46 and 50, both of these panel members were potential alternate jurors.[10] Regarding member 46, Defendants stated that she, as well as various members of her family, had been arrested in the past. Defendants knew that the next available panel member had no arrests so they chose to strike member 46. The court found that this was a race-neutral reason. Frazier did not offer any argument or information that this reason was merely pretextual and thus did not meet his burden to prove the reason was pretextual and the strike in fact discriminatory. With regard to panel member 50, Defendants stated that the member's son had been fired by the City's Water Department. Frazier likewise offered no argument as to how this reason was merely pretext and again failed to meet his burden.

"When reviewing the trial court's decision regarding a *Batson* challenge, because of the extensive role of the trial court and because the findings of fact turn largely on an evaluation of credibility, a reviewing court must give great deference to those findings." *Benedict,* 44 S.W.3d at 420 (internal quotation marks and citation omitted). "The trial court's determination of the propriety of the strike will not be reversed unless it was

---

[10] Both of the alternate jurors selected were dismissed from service prior to deliberation. In *State v. Carter*, 889 S.W.2d 106, 109 (Mo. App. E.D. 1994), *habeas relief denied by Carter v. Kemna*, 255 F.3d 589(8th Cir. 2001), the court stated that "*Batson* does not stand for the proposition there is a Constitutional right to be an alternate juror." The court ruled that, when no alternate jurors deliberate, the alternate venireperson's exclusion does not violate the constitutional rights of either the defendant or the excluded alternate venireperson. *Id.* We need not address this issue because we have determined that the court properly overruled Frazier's *Batson* challenges. *Accord State v. Jackson*, 385 S.W.3d 437, 441 (Mo. App. W.D. 2012); *State v. Dow*, 375 S.W.3d 845, 850 n.4 (Mo. App. W.D. 2012); *Goodman v. Holly Angle, LMT*, 342 S.W.3d 458, 464 (Mo. App. W.D. 2011).

clearly erroneous, that is, we are left with a firm conviction that a mistake was made." *Id.* (citation omitted).

Finally, although Frazier argues that because there were no African-Americans on the jury, the trial court erred in overruling his *Batson* challenges, our Supreme Court has already held that "disparate impact alone will not convert a facially race-neutral explanation into a *per se* violation of equal protection." *Parker*, 836 S.W.2d at 934 (citing *Hernandez*, 500 U.S. at 361). This contention has no legal support.

In applying the three-step process, we find that the trial court did not clearly err in denying Frazier's *Batson* challenges because he failed to overcome his burden of showing that the Defendants' proffered reasons for the strikes of any of the venire members were merely a pretext for discrimination. This point is denied.

## POINT VII

In Point VII, Frazier contends that "the trial court erred in denying plaintiff's motion for new trial, because the jury's verdict was against the weight of evidence in that the evidence demonstrated that plaintiff suffered serious injuries as a result of Officer Swope's recklessness."

### Standard of Review

We review the decision whether to grant a new trial for an abuse of discretion. *Hall v. Utley*, 443 S.W.3d 696, 701 (Mo. App. W.D. 2014) (citation omitted). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration. *Id.*

29

The trial court is vested with broad discretion when ruling on a motion for a new trial. *Koppe v. Campbell*, 318 S.W.3d 233, 240 (Mo. App. W.D. 2010) (citation omitted). To the extent our analysis requires us to weigh the evidence, we do so in the light most favorable to the trial court's decision, pursuant to our Supreme Court's recent holding in *Badahman v. Catering St. Louis*.[11]

When considering a challenge that a judgment is against the weight of the evidence and the evidence would support two different but reasonable conclusions, appellate courts must defer to the circuit court's assessment of that evidence. *Ivie v. Smith,* 439 S.W.3d 189, 206 (Mo. banc 2014) (citations omitted). Appellate courts defer on credibility determinations because the circuit court is in a better position to weigh the contested and conflicting evidence in the context of the whole case. *Id*. "The circuit court is able to judge directly not only the demeanor of witnesses, but also their sincerity and character and other trial intangibles that the record may not completely reveal." *Id*. Our standard of review "takes into consideration which party has the burden of proof and that the [fact finder] is free to believe all, some, or none of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility determinations through its own perspective." *Id.* "This includes facts expressly found in

---

[11] The Supreme Court clarified the standard of our review regarding evidentiary issues in cases where a trial court has granted a new trial based on the jury's verdict as being against the weight of the evidence. *Badahman v. Catering St. Louis*, 395 S.W.3d 29, 40-41 (Mo. banc 2013). The Court noted that the previous opinions setting forth the standards of review (reviewing the evidence in the light most favorable to the verdict in a denial of a new trial and most favorable to the moving party in the grant of a new trial) should be clarified to avoid confusion. The Court concluded that "the best way to articulate the proper standard of review in the grant or denial of a motion for new trial is that the evidence is reviewed in 'the light most favorable to the circuit court's order.'" *Id.* at 40-41.

the written judgment or necessarily deemed found in accordance with the result reached."
*Id*. (citations omitted).

Additionally, "[i]n order for the trial court to grant a motion for new trial, the error complained of as a basis for the motion must be prejudicial to the party seeking the new trial." *Balke v. Cent. Mo. Elec. Coop.*, 966 S.W.2d 15, 25 (Mo. App. W.D. 1997).

## Discussion

This point violates Rule 84.04(d)-(e)[12] in multiple aspects such that its deficiencies are dispositive. Frazier's *entire* argument section under this point is as follows:

> Based on all the arguments fully briefed in sub-parts I through VI above, incorporated by reference, a new trial should have been granted. The errors fully briefed in sub-parts I through VI above, prejudiced Plaintiff in that he was denied a fair and equitable trial. Based on the above, the trial court's discretion was abused when it denied a new trial to the Plaintiff.

First, the argument section does not contain support for the point presented, which was that "the jury's verdict was against the weight of evidence in that the evidence demonstrated that plaintiff suffered serious injuries as a result of Officer Swope's recklessness." A weight-of-the-evidence argument is not developed in the argument section. In fact, there is no reference to "weight of the evidence" anywhere in the brief other than a footnote stating that Frazier moved for a new trial based on the argument that the verdict was against the weight of the evidence. "An appellant must develop the contention raised in the point relied on in the argument section of the brief." *Horwitz v. Horwitz*, 16 S.W.3d 599, 605 (Mo. App. E.D. 2000) (citations omitted).

---

[12] All rule references are to Missouri Supreme Court Rules (2014).

Second, Frazier's argument contains "bare conclusions without linking those conclusions to specific evidence and without providing any rationale supporting the conclusions." *Carlisle v. Rainbow Connection, Inc.*, 300 S.W.3d 583, 586 (Mo. App. E.D. 2009) (citation omitted). "Mere conclusions and the failure to develop an argument with support from legal authority preserve nothing for review." *Id.* (citation omitted). "If a party does not support contentions with relevant authority or argument beyond conclusory statements, the point is deemed abandoned." *Id.* at 585 (citation omitted). Moreover, the use of incorporation by reference is not sufficient in the argument section of a Point Relied On. *Von Ruecker v. Holiday Inns, Inc.*, 775 S.W.2d 295, 299 (Mo. App. E.D. 1989) (point is deemed abandoned where argument is a half page in length, cites no authority and incorporates by reference another part of the record).

But even setting aside all of the Rule 84.04 violations, Frazier's point is entirely without legal support as none of his previous Points Relied On actually contain argument as to how each alleged error resulted in *prejudice*; rather, each previous point argues why a particular ruling was erroneous. As stated above, evidence of prejudice is required in order to grant a new trial. *Balke,* 966 S.W.2d at 25. "When a party fails to develop a point relied on in the argument section, it is deemed abandoned." *Lack*, 151 S.W.3d at 867 (citation omitted).

Further, Frazier bore the burden of proof to establish his cause of action. The fact finder was free to disbelieve the evidence which he brought forth to support his cause of action. *White v. Dir. of Revenue*, 321 S.W.3d 298, 312 (Mo. banc 2010). We defer to the

factual findings of the trial court. Frazier fails to address how the cause must be reversed under this standard of review. This point is denied.

## POINT VIII

In his last point, Frazier contends that the trial court erred in denying his motion for a new trial, which alleged that the verdict was against the weight of the evidence, "because cumulative error resulted" from all of the allegedly erroneous rulings contained in the prior points above.

### Standard of Review

As stated above, a trial court has great discretion in determining whether to grant a new trial. *Hall*, 443 S.W.3d at 701. Its decision is presumed to be correct and will be reversed on appeal only for an abuse of discretion. *Mason v. Wal-Mart Stores, Inc.*, 91 S.W.3d 738, 741 (Mo. App. W.D. 2002) (citations omitted).

### Discussion

"An appellate court may grant a new trial based on the cumulative effects of errors, even without a specific finding that any single error would constitute grounds for a new trial." *Koontz v. Ferber*, 870 S.W.2d 885, 894 (Mo. App. W.D. 1993) (citation omitted). "However, relief will not be granted for cumulative error when there is no showing that prejudice resulted from any rulings of the trial court." *Id.* (citation omitted).

Frazier's last point suffers from the same fatal flaw as Point VII in that he again violates Rule 84.04 and does not provide support for his point. His Point Relied On

33

identifies the ruling at issue as the court's denial of his motion for a new trial because the verdict was against the weight of the evidence. However, he does not develop this argument. His argument section consists of only two sentences, without citations to legal authority and again cross-references previous arguments made as to how the court's rulings were erroneous. He concludes by asserting that the errors "prejudiced Plaintiff in that he was denied a fair and equitable trial."

Because we did not find error in Frazier's first seven points and because he neglected to present any argument that prejudice resulted from any of the trial court's rulings, we refuse to grant relief for cumulative error.

Point VIII is denied.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur

34