

## Missouri Court of Appeals
### Southern District
### Division One

USAA GENERAL INDEMNITY COMPANY, )
)
            Respondent, )
)
  vs. )
)
RONALD C. PRATER, )
DEANN RAE THOMPSON, )
GWENDALYN GONZALES, and )
LUCILLE CURTMAN, )    No. SD36424
)
            Appellants, )    FILED: June 1, 2020
)
and )
)
DAKOTA BALL, by and through his )
Guardian ad litem, PATRICIA KECK, )
)
            Defendant. )

APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

Honorable John D. Beger, Judge

**AFFIRMED**

In this declaratory judgment action, Ronald Prater, Gwendalyn Gonzales, Deann

Thompson, and Lucille Curtman ("Appellants") claim on appeal that the trial court erred in

entering summary judgment in favor of USAA General Indemnity Company ("GIC") because

even though there is no genuine issue as to any material fact, GIC was not entitled to such

1

judgment as a matter of law.[1]  Finding no legal error as claimed, the trial court's judgment is affirmed.

<h3 style="text-align:center"><b><u>Factual and Procedural Background</u></b></h3>

On February 2, 2011, Dakota Ball was involved in a car wreck that caused injuries to Ronald[2] and resulted in the death of his wife Juanita Prater.

At the time of the wreck, Dakota was driving a 2004 Mitsubishi Eclipse (the "Eclipse"), owned by his father, Stacy Ball.  United Services Automobile Association ("USAA") had previously issued an automobile liability insurance policy to Stacy that was in effect at the time of the wreck, which listed the Eclipse as a covered vehicle and listed Dakota as a covered additional driver ("Stacy's policy").  Stacy's policy provides bodily injury coverage up to $25,000 per person and $50,000 per accident.

Also at the time of the wreck, Dakota resided at the home of Stacy and his wife, Christiana Ball.  GIC had previously issued Policy No. 02529 38 54 G 7101 3 to Christiana Gruendler (now Ball and Dakota's stepmother) that was in effect at the time of the wreck, which listed a 2004 Chevrolet Silverado 1500 as the covered vehicle ("Christiana's policy").  Christiana's policy provides bodily injury coverage up to $25,000 per person and $50,000 per accident.

Ronald filed a lawsuit against Dakota to recover his own personal injury damages.  Ronald, Gwendalyn, Deann, and Lucille—Juanita's wrongful death beneficiaries—filed a separate lawsuit against Dakota to recover wrongful death damages.  The two lawsuits were

---

[1] Rule 74.04(c)(6), Missouri Court Rules (2019), is directed toward trial court rulings on motions for summary judgment and provides, in relevant part, "If the motion, the response, the reply and the sur-reply show that there is no genuine issue as to any material fact *and that the moving party is entitled to judgment as a matter of law*, the court shall enter summary judgment forthwith."  (Emphasis added.)

[2] Due to some shared last names, we refer to individuals by their first names for clarity.  No disrespect or familiarity is intended.

consolidated, and the Circuit Court of Greene County entered a consent judgment against Dakota: (i) in favor of Ronald for his personal injuries in the amount of $578,851.72, plus post-judgment interest at the rate of 6.42% per annum; (ii) in favor of the wrongful death beneficiaries for wrongful death damages in the amount of $578,851.72, plus post-judgment interest at the rate of 6.42% per annum; and (iii) in favor of all plaintiffs for statutory court costs in the amount of $6,968.35.

USAA provided Dakota with an attorney to represent him in the tort lawsuits against him. After entry of the judgments against Dakota, USAA paid $12,500 to Juanita's wrongful death beneficiaries and $19,468.35 ($12,500 plus $6,968.35 court costs) to Ronald in partial satisfaction of those judgments.

GIC denied that Christiana's policy provided coverage for her stepson Dakota's liability for the car wreck that injured Ronald and killed Juanita. GIC filed the present lawsuit seeking a declaratory judgment that its policy provides no coverage for the subject car wreck and that it has no duty to indemnify or defend Dakota for the wreck.

On November 5, 2019, the trial court entered a Judgment and Order Granting Summary Judgment in GIC's favor. The trial court determined the uncontroverted material facts to be:

- Dakota Ball is the stepson of Christiana Gruendler (now Ball). They are family members.

- Dakota Ball was driving the [Eclipse] at the time of the collision, which his father bought for Dakota to drive. As such, the [Eclipse] was available for Dakota Ball's regular use.

- The only listed driver and only listed automobile on Ms. Gruendler's policy with [GIC] were Ms. Gruendler and her Silverado. In other words, Ms. Gruendler's policy with GIC does not list Dakota Ball as a driver or the [Eclipse] as an insured vehicle.

The trial court's judgment quoted the GIC policy's "regular use" exclusion, which states:

3

B. **We** do not provide Liability Coverage for the ownership, maintenance, or use of:

…

    3. Any vehicle, other than **your covered auto**, that is owned by, or furnished or available for the regular use of, any **family member**. This exclusion (B.3) does not apply to **your** maintenance or use of such vehicle.

The trial court determined that this provision precludes coverage for Dakota and for the subject car wreck and that GIC was therefore entitled to judgment as a matter of law. The trial court accordingly ordered and adjudged that GIC has no duty to indemnify or defend Dakota for the wreck.

## Standard of Review

"Because the propriety of summary judgment is an issue of law, this Court reviews the grant of summary judgment *de novo*." ***Dutton v. Am. Family Mut. Ins. Co.***, 454 S.W.3d 319, 321 (Mo. banc 2015).

## Discussion

In their sole point on appeal, Appellants claim that the trial court committed a legal error in applying the "regular use" exclusion in Christiana's policy to enter judgment in favor of GIC because that exclusion "is invalid to the extent it violates the minimum operator's coverage required by Missouri's Motor Vehicle Financial Responsibility Law [(MVFRL)]."[3]

"[I]t is well-settled that to effectuate the purpose of the MVFRL, the MVFRL *supplements* every insurance policy in Missouri even if the express terms of the policy do not provide coverage. *Id.* at 324. "[I]f the MVFRL requires a policy issued in Missouri to provide coverage, and if the policy as a whole excludes such coverage, then a provision providing such coverage will in effect be read into the policy, up to the MVFRL's minimum statutory limit of

---

[3] Sections 303.010 to 303.370. Unless otherwise indicated, all statutory references are to RSMo 2000.

4

liability coverage." *Id.* Accordingly, an exclusion in a policy denying coverage required by the MVFRL will not be applied. *Karscig v. McConville*, 303 S.W.3d 499, 502 (Mo. banc 2010).

In their opening brief, Appellants mention and address the MVFRL's statutory requirements in only one paragraph:

> The MVFRL requires that every motor vehicle liability policy provide coverage either as an owner's or an operator's policy. § 303.190.1, RSMo. An *owner's* policy insures the use of a specified vehicle by the vehicle's owner (the named insured) and all persons using the specified vehicle with permission of the owner/named insured. § 303.190.2, RSMo. An *operator's* policy insures the named insured for use "of any motor vehicle not owned by him or her." § 303.190.3, RSMo. Both owner's and operator's policies must provide minimum coverage for bodily injury or death of at least $25,000 for each person and at least $50,000 for two or more persons injured in a single accident. §§ 303.190.2 & 303.190.3, RSMo.

(Underlined emphasis added.) While acknowledging that Christiana's policy is like an owner's policy because it specifies a particular insured vehicle, the 2004 Chevrolet Silverado 1500, Appellants assert that "the coverage it provides is much more akin to that of an *operator's* policy."[4] Appellants, however, make no further mention in their brief of section 303.190.3 or any of its statutory requirements for an operator's policy. Likewise, Appellants omit in their brief any attempt to demonstrate how the provisions of section 303.190.3, which they describe as requiring an operator's policy to insure the "named insured for use 'of any motor vehicle not owned by him or her[,]'" apply to Christiana's policy to require coverage for Dakota, who is not a named insured under that policy, while operating the Eclipse at the time of the wreck.[5]

---

[4] We have previously noted some divergent views in the case law as to whether a policy can be both an owner's and an operator's policy. *Progressive Preferred Ins. Co. v. Mason*, 584 S.W.3d 374, 379 n.6 (Mo.App. 2019). Given our determination that Christiana's policy was not required by section 303.190.3 to afford any coverage to Dakota, we need not address that issue.

[5] Unmoored to any analysis of section 303.190.3 operator policy requirements, Appellants' argument embarks upon a journey comparing and contrasting the factual backgrounds in various cases involving the MVFRL, drawing favorable comparisons in the facts here to the facts in cases finding MVFRL required coverage and pointing out distinctions in the facts here with the facts in cases where such coverage was not required. Appellants weave throughout their argument their primary reliance upon *Karscig v. McConville*, 303 S.W.3d 499 (Mo. banc 2010), stating at one point that "The facts of *Karscig* are remarkably similar to those of the present case, and the USAA

GIC, in its responding brief, initially sets out the entirety of section 303.190.3, which provides:

> Such operator's policy of liability insurance *shall insure the person named as insured therein* against loss from the liability imposed upon him or her by law for damages arising out of the use by him or her of any motor vehicle not owned by him or her, within the said territorial limits and subject to the same limits of liability as are set forth above with respect to any owner's policy of liability insurance.

(Emphasis added.) GIC then argues that because this section of MVFRL only has implications for a named insured, it does not require any MVFRL coverage under Christiana's policy for Dakota who, as an uncontroverted fact, was not a named insured in that policy at the time of the wreck.

Appellants, in their reply brief, assert that GIC's argument "is premised on equating (i) the person it listed as 'named insured' on its policy's declarations page with (ii) the phrase 'the person named as insured', for whom Section § 303.190.3 requires coverage." Appellants then proceed to substantively challenge this premise in a single paragraph, as follows:

> To determine the meaning of an insurance policy, the Court must apply "the meaning which would be attached by an ordinary person of average understanding." *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). The most obvious meaning of "the person named as insured" that would occur to an ordinary person of average understanding is a person for whom an insurance policy provides coverage. And by its own language, the GIC policy provides coverage to Dakota Ball. The Insuring Agreement provision of the policy's Bodily Injury coverage states: "**We** will pay compensatory damages for **BI** or **PD** for which any **covered person** becomes legally liable because of an auto accident." The [GIC] does not limit its coverage to the "named insured"; it also provides coverage to other people, which it designates "covered persons." In plain English, both the "named insured" and other "covered persons" are "persons

GIC policy must therefore provide coverage to Dakota Ball on the same basis." Appellants omit, however, any mention, acknowledgment, or consideration that Jennifer McConville, the operator of the non-owned vehicle in the wreck with Karscig, was the named insured in the operator's policy at issue in that case. Our Supreme Court determined that "coverage is provided because Jennifer, *as the policyholder named in the declarations*, is legally liable for Karscig's injuries due to her use of a private passenger car." *Id.* at 502 (emphasis added). This omitted fact distinguishes *Karscig* from the facts here where Dakota is not the named insured in the policy at issue and Appellants have failed to demonstrate in their brief, as discussed *infra*, that section 303.190.3 requires that policy to provide coverage for someone other than the named insured.

6

named as insured" by the GIC policy. Thus, Section 303.190.3 requires minimum coverage for "covered persons", such as Dakota Ball.

(Record citations omitted.)

Appellants' response fails for many reasons, of which we mention only three. First, Appellants inaccurately state that "by its own language, the GIC policy provides *coverage* to Dakota Ball." (Emphasis added.) By its terms and the application of its "regular use" exclusion, however, Christiana's policy does not provide any *coverage* for Dakota at the time of the wreck. The only way this statement would be accurate is if the "regular use" exclusion in the policy is not applicable because of the MFVRL. Appellants' argument, therefore, assumes as true the very premise they are required to demonstrate in this appeal, thereby employing the logical fallacy of begging the question.

Second, Appellants also assert that "The [GIC] does not limit its coverage to the 'named insured'; it also provides coverage to other people, which it designates 'covered persons.'" While this may be true, Appellants fail to cite any relevant legal authority that such additional coverage, in and of itself, necessarily implicates section 303.190.3 requirements. Appellants also fail to address or demonstrate why this additional coverage does not fall under section 303.190.7, which provides:

> Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants such excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

Moreover, Appellants' reliance on this statement to imply that Christiana's policy provided *coverage* for Dakota because he met the policy's definition of a "covered person" irrespective of

7

the "regular use" exclusion in that policy is another instance and example of Appellants' argument begging the question.

Third, to the extent Appellants are contending that a person who meets the definition of a "covered person" under Christiana's policy is a "person named as insured therein" as that phrase is used in section 303.190.3, they do so without citation to any relevant legal authority, without any analysis of that phrase as used in that statute, and in contravention of its plain meaning as so used. "Mere conclusions and the failure to develop an argument with support from legal authority preserve nothing for review." *Frazier v. City of Kansas City*, 467 S.W.3d 327, 346 (Mo.App. 2015) (quoting *Carlisle v. Rainbow Connection, Inc.*, 300 S.W.3d 583, 586 (Mo.App. 2009)). Appellants proffer no argument that section 303.190.3 is in any way unclear or ambiguous or otherwise in need of statutory construction or interpretation. Rather, Appellants essentially argue that we should ignore the words "named as" in section 303.190.3 and read that section as requiring operator policy coverage for any "person… insured therein." Appellants cite no authority that allows us to ignore those words in section 303.190.3 and, indeed, they could not. "This Court cannot ignore words in a statute and must give meaning to every word used." *Grain Belt Express Clean Line, LLC v. Pub. Serv. Comm'n*, 555 S.W.3d 469, 473 (Mo. banc 2018).

For all of the above reasons, Appellants have failed to demonstrate any trial court error based upon their claim that GIC was not entitled to judgment as a matter of law. Appellants' point is denied.

### Decision

The trial court's judgment is affirmed.

GARY W. LYNCH, P.J. – OPINION AUTHOR
NANCY STEFFEN RAHMEYER, J. – CONCURS
WILLIAM W. FRANCIS, JR., J. – CONCURS

8